## FRANCIS A. HASSIE, AND ANNIE HASSIE HIS WIFE *v.* GOD IS WITH US CONGREGATION.

LIABILITY OF GARNISHEE. — Unless the defendant in the attachment could have maintained, under the practice at common law, an action of debt or *indebitatus assumpsit* against the garnishee at the time the process of garnishment was served upon him, the garnishee process does not make the garnishee liable to the plaintiff in the attachment.

GARNISHMENT.—An equitable demand cannot be garnisheed—garnishment reaches only *legal* debts, which the defendant in the attachment could enforce in his own name.

DEMAND NOT LIABLE TO GARNISHMENT.—Where A. contracted with B., in writing, to construct a building for him, and B. agreed to pay a certain sum therefor, payable in installments, as the work progressed, and C. then contracted with A. to do a part of the work for a sum fixed, to be paid in installments as his work progressed, and A. assigned to C. a part of the money to fall due on B.'s contract equal to the sum to be paid C. : *Held*, that no such legal demand existed in favor of C. against B. as was liable to garnishment by C.'s creditor.

ASSIGNMENT OF DEBT NOT IN EXISTENCE.—An assignment of a debt not in existence is not valid at law. Such assignment creates an equity only.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

The following is that part of the contract between Davis and Kincaid which refers to the case at bar:

"Articles of agreement, made this 3d day of September, A. D. one thousand eight hundred and sixty-four, between Chas. W. Davis, builder and contractor, for the erection of the Synagogue Emanu El, San Francisco, party of the first part, and John E. Kincaid, bricklayer and builder, party of the second part.

"First—The said party of the second part does hereby, for himself, his heirs, executors, and administrators, covenant, promise, and agree with and to said party of the first part, his executors, administrators, and assigns, that he, the said party of the second part, or his executors or administrators, shall and will, for the consideration hereinafter mentioned, on or before the 15th day of May, A. D. 1865, well and sufficiently erect and finish the new building on Sutter street, San Francisco, contracted for as aforesaid, for a synagogue, agreeable to the drawings and specifications made by William Patton, architect, and signed by the parties hereunto annexed, within the time aforesaid, in a good, workmanlike and substantial manner, to the satisfaction and under the direction of the said William Patton, architect, to be testified by a writing or certificate, under the hand of the said William Patton, and also shall and will find and provide such good, proper, and sufficient materials, of all kinds whatsoever, as shall be proper and sufficient for completing and finishing all the works mentioned in the bricklayer's specification, excavation, and all brickwork and excavation mentioned or implied in the said specifications and the addendas thereto, and other works of said buildings mentioned in the said specification, for the sum of thirty-three thousand two hundred and seventy-five dollars.

"And the said party of the first part does hereby, for himself, heirs, executors, and administrators, covenant, promise, and agree, with and to the said party of the second part, or his executors and administrators, that he, the said

party of the first part, or his executors or administrators, shall and will, in consideration of the covenants and agreements being strictly performed and kept by said party of the second part, as specified, well and truly pay, or cause to be paid, unto the party of the second part, or his executors, administrators, or assigns, the sum of thirty-three thousand two hundred and seventy-five dollars, of lawful money, of the United States of America, in manner following:

" In gold American coin, at the rate of seventy-five per cent on the value of the work done, according to the rate at which the work was undertaken by the party of the second part, and by certificates for the said coin, to be drawn on the trustees of the Synagogue Emanu El, in the account of Chas. W. Davis with them, as contractor for the building, the amount above named, subject to the conditions in the specifications, being hereby set aside, and assigned over unto the party of the second part, by the party of the first part; *provided,* said sum, as paid on account, shall not be considered an acceptance of the work, until the same shall have been performed according to contract, and the balance within thirty days of each acceptance having been made by the architect of the work herein undertaken to be done:

"*Provided,* that in each of the said cases a certificate be obtained and signed by the said architect that such sums are due thereon, as therein mentioned, according to the within named stipulation."

The defendant appealed.

The other facts are stated in the opinion of the Court.

*Jarboe & Harrison,* for Appellant.

The defendant is not liable to the plaintiffs, unless at the time of the service upon it of the copy of the writ and notice it was owing a debt to Kincaid.   (Prac. Act, Secs. 127, 126, 124; *Norris* v. *Burgoyne et al.,* 4 Cal. 409.)   The debt owing to Kincaid must have been a fixed, determined, legal indebtedness, as distinguished from a claim or equitable right.  (*May*

.v. *Baker*, 15 Ill. 89; Drake on Attachment, 3d ed., Secs. 457, 545; *Folsom* v. *Haskell*, 11 Cush. 470; *Harrell* v. *Whitman*, 19 Ala. 135; *Hoyt* v. *Swift*, 13 Vt. 129; *Johnson* v. *Lamping*, 34 Cal. 293.)

Unless Kincaid himself could have brought an action directly against defendant at the time the writ and notice was served upon defendant, such service created no right in favor of the plaintiffs against the defendant. (Drake on Attachment, Secs. 452, 458, 462, 541, 490, 546, 3d ed.)   At the time of the service upon the defendant of the writ and notice no such conventional privity of contract existed or had ever been created between Kincaid and the defendant as is necessary to create the statutory privity of contract between the plaintiffs and the defendant.

It is insisted by the plaintiffs, however, that the facts in the case show that there had been, prior to the service of said writ and notice upon the defendant, such an assignment by Davis to Kincaid of the moneys to become due from the defendant to him, that upon the maturity of his chaim it ripened into a debt immediately owing by the defendant to Kincaid, and therefore our former propositions cease to have application or pertinence.

To this we reply: First—No such assignment was ever made by Davis to Kincaid.   (*Field* v. *Mayor of New York*, 2 Seld. 182; *Bibend* v. *Liverpool Ins. Co.*, 30 Cal. 78; 2 Story Eq. Jur., Sec. 1,040; *Moody* v. *Wright*, 13 Met. 32; *Thallhimer* v. *Brinkerhoff*, 3 Cowen, 646; *Smith* v. *Jones*, 15 Johns. 229; *Guernsey* v. *Carver*, 8 Wend. 492; *Colver* v. *Van Patten*, 15 Wend. 557; *Christmas's Adm'rs et al.* v. *Griswold et al.*, 8 Ohio S. R. 558.)   Second—The assignment claimed to have been made would, at most, only create an equitable right. (*Field* v. *Mayor of New York*, 2 Seld. 182; *Bibend* v. *Liverpool Ins. Co.*, 30 Cal. 78; 2 Story Eq. Jur., Secs. 1,039, 1,040; and authorities above cited under last point.)   Third—Under the garnishment of a debt, the process does not reach equitable rights.   (Drake on Attachment, 547, 545.)   Fourth—To enforce such right, the plaintiffs must proceed in a different

manner and with different parties. (*Field* v. *Mayor of New York*, and cases there cited.)

The defendant had contracted on the 26th day of August, 1864, to pay to Davis seventy-six thousand three hundred dollars for doing a certain thing. This was an entire contract. Defendant had agreed to pay the sum in certain installments. Davis had but two rights of action under the contract—for the full amount of seventy-six thousand three hundred dollars, when he had completed his contract; or for the separate installments, as they fell due. He could not have split his demand, and sued for thirty-three thousand two hundred and seventy-five dollars, or any other part of the sum of seventy-six thousand three hundred dollars, unless that part was an "installment" of the seventy-six thousand three hundred dollars certified to be due by the architect. (*Thallhimer* v. *Brinkerhoff*, 3 Cowen, 646; *Smith* v. *Jones*, 15 Johns. 229; *Guernsey* v. *Carver*, 8 Wend. 492; *Colver* v. *Van Patten*, 15 Wend. 557.)

But, *nemo plus transferre potest quam ipse habet.* If he himself had not the right to sue for thirty-three thousand two hundred and seventy-five dollars, he could not give the right to Kincaid, by assignment, to sue for that sum, or any part of it, or anything, except one or more of his own installments. Again, the pretended assignment to Kincaid would have been void at the common law, as an assignment of a thing not yet *in esse.* The sum of thirty-three thousand two hundred and seventy-five dollars was not yet earned at the time when it is claimed to have been assigned. (2 Story Eq. Jur., Sec. 1,040; *Moody* v. *Wright*, 13 Met. 32.) And is also void in law, as being an assignment of part of a chose in action. (*Field* v. *Mayor of New York*, 2 Seld. 182.)

*E. D. Wheeler*, and *R. A. Redman*, for Respondents.

What is a *debt?*

Blackstone defines it as "a sum of money due by certain and express agreement."

It is not necessary to go abroad for a definition, for the word has been defined in clear and concise language by this Court, in a thoroughly considered case wherein that was the leading subject of discussion. In *Perry* v. *Washburn*, 20 Cal. 350, the Court say: "*A debt is a sum of money due by contract, express or implied.*"

Accepting this as a correct definition of the term, and we shall encounter but slight difficulty in demonstrating the existence of a debt at the date of the garnishment. By the contract of August 26th, 1864, the defendant expressly promised to pay C. W. Davis, *or his assigns*, the sum of seventy-six thousand three hundred dollars in American gold coin, by installments, from time to time, as the work progressed, provided a certificate was obtained from the architect in each case.

Here is an agreement to pay not only the total sum of seventy-six thousand three hundred dollars, but to pay it in installments; the sum is voluntarily split up by the defendant, in advance, and is expressly agreed to be paid, not alone to Davis, but also to his assigns. The only condition precedent was the certificate signed by the architect.

The required certificate was obtained, duly signed.

Thus it is clear that on the morning of January 28th, 1865, the defendant owed a sum of money, to wit: five thousand dollars, and that the same was due upon an express contract. All of which, in our opinion, constituted a *debt*. It is also clear that, had there been no assignment, Davis could have maintained an action against the defendant for the recovery of the money the moment the architect's certificate was obtained; and if Davis could have recovered the installment, certainly Kincaid could, if the same had been previously assigned to him.

Admitting there was an *indebtedness*, and that the same had been assigned to Kincaid prior to plaintiffs' attachment, yet we are told the attachment did not reach the debt, because it was an *equitable* and not a *legal* debt. The reasoning upon which this doctrine is supposed to rest never had

an existence under our system.   The statute makes no such distinction.   It declares broadly (Practice Act, Sec. 127) that "*all persons*   *   *   owing *any* debts to the defendant at the time of the service upon them of a copy of the writ and notice,   *   *   shall be liable to the plaintiff for the amount." Here is a liability created by the statute, and defined in clear and concise terms, free from ambiguity and from expressions of doubtful intent; and should not be frittered away by an invocation of the technical distinctions belonging to a system of procedure not only never adopted here, but expressly repudiated by the written law of the land.   Counsel have not told us *why* an attachment will not reach an equitable indebtedness; but have contented themselves with the citation of several foreign authorities, having first assumed their fitness as a guide for the construction of our own statute. That these authorities are not apposite, when applied to the law of this State, we apprehend will readily appear from the authorities themselves.


By the Court, SANDERSON, J. :

This is an action by an attaching creditor against a garnishee, founded upon the one hundred and twenty-seventh section of the Practice Act.

On the 26th of August, 1864, the defendant entered into a written contract with one Davis, by which the latter agreed to build for the former a synagogue for the sum of seventy-three thousand and six hundred dollars, to be paid to him or his assigns, in installments, as the work progressed, upon the certificates of the defendant's architect.

On the third of September following, Davis entered into a written contract with one Kincaid, by which the latter agreed to do all the brickwork for the sum of thirty-three thousand two hundred and seventy-five dollars, to be paid in installments as the work progressed, upon certificates of the architect.   By the terms of this contract Davis set apart and assigned to Kincaid thirty-three thousand two hundred

and seventy-five dollars of the seventy-three thousand and six hundred dollars called for by his own contract with the defendant.

On the 28th of January, 1865, there had become due from the defendant, for work done upon the synagogue, the sum of five thousand dollars. The work had been done by Kincaid, under his contract with Davis, and on that day defendant's architect delivered to Kincaid a certificate, addressed to the Building Committee of the defendant, stating that the sum of five thousand dollars was due to Davis for work done upon the synagogue, as per contract, and that the same was payable to Kincaid upon Davis' indorsement of the certificate. Without any indorsement by Davis, the defendant, on the same day, advanced to Kincaid the sum of one thousand dollars.

On the twenty-ninth of January the plaintiffs sued out an attachment against Kincaid, and garnished the defendant.

On the thirtieth of January the defendant, notwithstanding the garnishment, paid the remaining four thousand dollars to Davis, who receipted the certificate in full, and, thereafter, paid over the money to Kincaid. This was done by the defendant with full notice of Kincaid's contract with Davis, and that the work for which payment was being made had been performed by Kincaid, under that contract.

Upon the foregoing facts the Court below held that the contract between Davis and Kincaid operated as an assignment of the money to become due to Davis from the defendant to the amount of thirty-three thousand two hundred and seventy-five dollars, and that the amount thus assigned became due and payable to Kincaid in installments upon the delivery to him of the architect's certificates; and that at the time the defendant was garnished there was due from it to Kincaid the sum of four thousand dollars, for which judgment was entered against defendant.

It is well settled that the word "debt," as used in the law of garnishment, includes only legal debts—causes of action

upon which the defendant in the attachment, under the common law practice, can maintain an action of debt, or *indebitatus assumpsit,* and not mere equity claims.

In *Hoyt* v. *Swift,* 13 Verm. 133, said Mr. Justice Collamer: " They must be such debts as the defendant can enforce in his own name. * * * When the trustee is pursued for a debt he must be an actual debtor. * * * The debt for which the trustee is pursued must be a debt which the defendant could pursue at law."

The statute of Illinois provides that garnishee process may be served upon all persons " who are in anywise indebted to the defendant," and the person thus served shall " answer upon oath what amount he or she is indebted to the defendant in the attachment." In *May* v. *Baker,* 15 Ill. 90, the Court said: " We think that a legal indebtedness is here meant; such an indebtedness as could be enforced in a Court of law, in an action brought by the defendant in the attachment against the garnishee. This attachment proceeding is strictly of a legal and not of an equitable character, and being in derogation of the common law, it is dependent entirely upon the statute for its support."

In *Harrell* v. *Whitman,* 19 Ala. 138, the Court said: " We consider it settled that the process of garnishment must be considered as a legal and not an equitable proceeding; consequently, the defendant's rights to the fund or property sought to be condemned must be legal, as contradistinguished from equitable."

The force and effect of the one hundred and twenty-seventh section of our Practice Act is to place the plaintiff in the attachment, in respect to the garnishee, in the place of the defendant in the attachment only so far as the legal rights of the latter are concerned. If, at the time the attachment was served upon the garnishee, the defendant in the attachment could have maintained against him, under the practice at common law, an action of debt or *indebitatus assumpsit,* then the liability of the garnishee is transferred

from the defendant to the plaintiff in the attachment, and not otherwise.

In view of the fact that under our system of practice law and equity jurisdictions are blended, it is claimed, on the part of the respondents, that the mere equitable rights of the defendant may be reached by this process, and a suggestion that such may be the case thrown out by Drake in his work on attachment (Sec. 457) is cited in support of the doctrine.  Whatever weight there might be in the suggestion, if our attachment laws were administered only by our District Courts, there certainly can be no weight attached to it, in view of the fact that our attachment laws are made applicable to Justices' Courts.  If our District Courts can pursue the equitable rights or claims of the defendant, and subject them to the satisfaction of the plaintiff's judgment, by parity of reason our Justices' Courts may do the same thing.  Independent of the question whether Justices' Courts under our Constitution can exercise jurisdiction in equity, it will hardly be contended, we think, that our attachment laws should be read as conferring it, unless, which they do not, they contain expressions admitting of no other construction.  If we admit that the equitable rights of the defendant can be reached in that way, we must go to the length of holding that our Justices' Courts can take cognizance of them, and must, if called upon, ascertain and condemn them to the use of the plaintiff, however difficult the undertaking may be, or however inadequate the powers of those Courts, or however incompetent their presiding officers. To such a length we are not prepared to go, until required to do so in language which will admit of no other interpretation.

That Kincaid could not have maintained an action at law against the defendant, at the time the attachment was served upon the latter, is very clear.  There was no privity of contract between them.  The defendant had never undertaken or promised, expressly or impliedly, to pay the money to Kincaid; the relation of debtor and creditor did not, there-

fore, exist between them. Kincaid was in no sense the assignee of the contract between Davis and the defendant. Davis did not assign his contract to Kincaid. He merely contracted with him to perform certain work, and assigned to him a portion of the money, thereafter to become due to him from the defendant, in the event he built the synagogue, or caused it to be built, according to his contract. The thing assigned was the sum of thirty-three thousand and two hundred and seventy-five dollars, parcel of the seventy-three thousand and six hundred dollars, thereafter to become due and payable to Davis, upon a contingency. The subject of the assignment was not *in esse*, and might never be. Upon such an assignment no action at law can be maintained. To make an assignment valid at law the thing assigned must have an actual existence at the date of the assignment. The right or claim acquired by Kincaid, if any, by virtue of the assignment against the defendant, was an equity only—a lien upon the fund thereafter to be created, which could be enforced only by a Court of equity. (2 Story's Eq. Jur., Sec. 1,040; *Field* v. *The Mayor of New York*, 2 Seld. 179.) Whether he acquired an equity or not is not material to the present purpose, and we do not desire to be understood as implying that he did. Upon that question we express no opinion. All we mean to say is that if he acquired any right by the assignment it was a mere equity, and therefore beyond the reach of the process in question.

The certificate of the architect created no debt in favor of Kincaid. Had it been indorsed by Davis and accepted by the defendant, it would have had that effect, doubtless, but not otherwise. It might then have amounted to an accepted draft or order upon which an action at law could have been maintained by Kincaid; but such was not the case.

Judgment reversed, and judgment for the defendant ordered.