No. 2,343.

JOHN HANDLEY, RESPONDENT, *v.* A. PFISTER & CO., APPELLANTS.

TRANSFER OF PROPERTY FOR THE BENEFIT OF CREDITORS.—LIEN.—ATTACHMENT.—
Where a debtor transfers to a creditor personal property to be sold by him, and the proceeds applied to the payment of his debt and the debts of certain other creditors, with their consent, the transferee and those he represents obtain a lien upon the property and its proceeds, superior to any which other creditors could acquire by the subsequent levy of an attachment or other process thereon.

IDEM.—TRUST.—A transfer of property by a debtor to a creditor, who undertakes to sell the same and apply the proceeds to the discharge of his own debt and those of certain other creditors, with the assent of the latter, clothes such creditor with a power, coupled with a trust for the benefit of those others, which he cannot relinquish until those debts are discharged.

APPEAL from the District Court of the Third District, Santa Clara County.

The case is stated in the opinion.

*S. O. Houghton,* for Appellants.

*First*—That Carter was a mere bailee, and the bailee of Fitzgerald, is too clear to require discussion.

The property in the grain was in Fitzgerald, and the proceeds were necessarily his until they had been applied according to his directions. (*Morss* v. *Stone,* 5 Barb. 516.)

(T.)

Any possession of the grain by the plaintiff, was the possession of Fitzgerald, for the former was but the servant of the latter. He was his farm hand.

The fact that the plaintiff was directed by Fitzgerald to pay the proceeds arising from the sale of the grain to certain persons, did not divest Fitzgerald of his right of property in the grain, nor take away from him the right to demand and receive from Carter the money realized from the sale thereof.

If the plaintiff had received all the money from Carter, he would, doubtless, under the circumstances, have been entitled to retain to his own use, such sum as he had been directed by Fitzgerald to retain, in payment of the amount due to him; but all the remainder would have been liable, even in the hands of the plaintiff, to seizure, at the instance of any creditor of Fitzgerald.

If Carter had never accounted for the proceeds of the sale of wheat, would Fitzgerald have been discharged of all liability to the plaintiff and to the other workmen, who were to be paid out of such proceeds? Most unquestionably not. The property had not passed out of Fitzgerald.

*J. S. Bentley* and *Francis E. Spencer*, for Respondent.

The position assumed by counsel for appellants, is untenable, his proposition without precedent, and the single authority cited for its support, is scarcely relevant to the case at bar.

The *status* of the parties changed on the 14th day of October, 1868. Prior to that date, Handley was the foreman or agent of Fitzgerald; but when Fitzgerald delivered the grain to him (Handley), for a specific purpose, *i. e.*, to dispose of and pay himself and the other employés, the subject-matter of the former agency passed from the control of his principal—his relation in regard to the property assigned was changed. (Story on Agency, Secs. 462, n. 1, 481, 489; Story on Bailments, Sec. 207; 7 Vesey, 276.)

And he was no longer clothed with a naked authority, but a trustee of an express trust. He possessed a power, coupled with an interest, irrevocable, even by the death or insanity of his grantor, Fitzgerald. (Story on Agency,

Secs. 477, 483, 488, 489; 1 Bell Com. Sec. 413, 4th ed. See, also, *Hunt* v. *Rausmainere's Adm'r.* 8 Wheat. R. 174.)

Marshall, C. J., says: "Where property is put into the hands of A., to dispose of for the benefit of B., that A. is possessed with a power, coupled with an interest, irrevocable, even by the death of the party granting the power."

And in *Hastie* v. *Arthur* (2 Bell Com. 199, n. 1), where "A. assigned a quantity of tobacco to B.," with directions that B. should sell, and out of the proceeds pay a debt due him, and remit the residue, if any, to A., and the tobacco being attached by other creditors of A., *before it came into the* possession of B., it was held by the House of Lords that B's title was valid as against A's attaching creditors." (See, also, Hilliard on Sales, 108; *Swanstein* v. *Sublette,* 1 Cal. 123.)

But the grain was delivered by Handley to Carter to sell, and in no way can Carter be held the bailee of Fitzgerald, for if Handley's was a mere personal trust, he could not delegate his authority to Carter (Story on Agency, Sec. 13), and the sale was void. The right of a debtor to assign a portion of his property for the benefit of a part of his creditors, has been recognized as well since as before the Statute of Frauds. (Angell on Assignments, 24.)

That the transaction was *bona fide,* is established by the fact that the plaintiff applied no portion of the proceeds of the grain towards liquidating his own demand.

So in *Forbes et al.* v. *Scannell* (13 Cal. 287): "The making and accepting of the trust is sufficient, especially if accompanied by the possession of the property. * * * If there be no fraud, a transfer by parol is sufficient. * * We are not aware of any principle of law requiring a deed." Hence, we submit that the transfer of the property by Fitzgerald to Handley, for the purpose of paying his debt, as well as that of Corcoran and others, and their assent thereto, made the transaction a mortgage (see *Dana* v. *Standfords and Deitz,* 10 Cal. 275), and was prohibited by no principle of the common law, and wholly without the Statute of Frauds, as well as the insolvent laws, and therefore valid against all Christendom, until the demands of the beneficiares had been satisfied.

WALLACE, J., delivered the opinion of the Court :

It appears that James Fitzgerald was justly indebted to several persons in divers sums of money, and, among the rest, to the plaintiff, who was, at the time, in his employ as a laborer.

Under these circumstances, and with the assent of these other creditors, he placed in the hands of the plaintiff certain wheat and barley, with instructions to sell it, apply its proceeds to the payment of these debts and return the overplus, if any, to Fitzgerald himself.

Handley, with the assent of these other creditors, having received the property under these instructions, caused it to be sold for cash by John Carter, but the sum realized was insufficient to discharge the indebtedness. A portion of the proceeds being yet in the hands of Carter, the appellant, who was creditor at large of Fitzgerald, attached it as the property of Fitzgerald, applicable to the payment of this debt.

Carter, subsequently having been sued by the respondent, brought the balance into the Court below, when Pfister & Co. being substituted as defendants on the record in his stead, the respondent recovered judgment.

The rights acquired by the appellants to the fund in question, through the levy of their writ of attachment, are precisely those which Fitzgerald, their debtor, had at the time of the levy. This was a right to the overplus remaining after the payment of these debts ; but there was no overplus.

No question is made but that the respondent and those whom he represents, were *bona fide* creditors of Fitzgerald, with a right to receive their money, and both a right and duty on the part of Fitzgerald to pay them. The steps taken by him to provide the means for their payment, were such as the law permitted him to pursue ; and when he, with the assent of these other creditors, placed this property in the hands of the respondent, with instructions to sell it and pay himself and them out of the proceeds, the respondent and those he represents, obtained a lien upon it and its proceeds superior to any which the appellants could acquire by the subsequent levy of their process thereon. The authority to

Handley to sell and apply the proceeds to the payment of his own debt, was, in law, irrevocable by Fitzgerald, and would continue while the debt should subsist. And as having, with the assent of the other creditors associated with him, undertaken to apply these proceeds in part to the payment of these debts, the respondent became clothed with a power coupled with a trust, for the benefit of those others, and which he was not at liberty to relinquish until these debts should have become in some manner discharged. (*Walsh* v. *Whitcomb*, 2 Esp. 565; *Goodwin* v. *Bowden*, 54 Maine, 425.)

· The case of *Morss* v. *Stone* (5 Barb. 516), cited by the counsel for the appellant, does not present any point illustrative of this. The question there involved, was whether the goods in the possession of Dutcher, which he had undoubtedly received from the hands of Morss, had been purchased by him, or merely received to sell for account of Morss. If the former, then the creditor of Dutcher might subject them to the payment of his debt; if the latter, he could not do so. There, it was not pretended that the bailor had made a delivery of goods to provide for the payment of his own debts, nor that the creditors had received or assented to a bailment, the purpose of which was to create a fund for their benefit.

The judgment is affirmed.