GREENE & BUTTON COMPANY, Appellant, vs. REMINGTON and another, Garnishees, etc., Respondents.

*September 25 — December 4, 1888.*

*Debtor and creditor: Voluntary assignment: Fraudulent conveyance: Garnishment.*

1. A bill of sale of a large part of a failing debtor's property, in consideration of which the vendees agree to pay a certain sum on the indebtedness of the vendor, paying certain debts in full, and the

balance of the money upon certain other debts in such order and at such figures as the vendees may choose, and, if any balance remains after payment and settlement of all debts so specified, applying such balance upon a further debt or otherwise as the vendor shall direct,— is not a voluntary assignment for the benefit of creditors within the meaning of sec. 1694, R. S., and, in the absence of fraud in fact, is a valid conveyance.

2. The creditors of the vendor, however, are not bound to accept payment from the vendees; and if a balance of the purchase money is left in the hands of the latter, which, by reason of the refusal of creditors to accept payment from them, cannot be paid out under the contract, such balance is the property of the vendor and, as such, is subject to garnishment in the hands of the vendees.

APPEAL from the Circuit Court for *Fond du Lac* County. Garnishment. The facts are stated in the opinion. The plaintiff appeals from a judgment in favor of the garnishees.

For the appellant there was a brief by *Colman & Sutherland,* and oral argument by *D. D. Sutherland.* They contended, *inter alia,* that the bill of sale is void because it is a conveyance in trust for the benefit of the grantor. *Berly v. Taylor,* 5 Hill, 577, and cases cited; *Rogers Locomotive & M. Works v. Kelley,* 88 N. Y. 234; R. S. sec. 2306; *Grover v. Wakeman,* 11 Wend. 189; *Barney v. Griffin,* 2 N. Y. 365; *Goodrich v. Downs,* 6 Hill, 438; *Collomb v. Caldwell,* 16 N. Y. 484; *Grant v. Lewis,* 14 Wis. 487; *Severin v. Reuckerick,* 62 id. 1; *Anderson v. Patterson,* 64 id. 557; *Kneeland v. Cowles,* 3 Pin. 316. It is void because it does not declare the uses to which the proceeds of the property are put, but directs the trustees to declare those uses. It operates to hinder, delay, or defraud creditors, because it permits the garnishees to say what creditors shall be paid and the amount to be paid to each. Wait on Fraud. Conv. sec. 9, and cases cited; *Coleman v. Burr,* 93 N. Y. 17, and cases cited; *Barnum v. Hempstead,* 7 Paige, 568; *Boardman v. Halliday,* 10 id. 223; *Averill v. Loucks,* 6 Barb. 471; *Hyslop*

v. *Clarke*, 14 Johns. 458; *Sheldon v. Dodge*, 4 Denio, 217; *Grover v. Wakeman*, 11 Wend. 189; *Ruth v. Oberbrunner*, 40 Wis. 238, 263; R. S. sec. 2081; *Nichols v. McEwen*, 17 N. Y. 22. But the instrument in question is a voluntary assignment, and is void because of preferences therein given, and because it does not comply with the statute upon that subject. *Norton v. Kearney*, 10 Wis. 443; *Page v. Smith*, 24 id. 368; *Winner v. Hoyt*, 66 id. 227, and cases cited; *Blabon v. Lewis*, 3 Phila. 454; *Bonns v. Carter*, 22 Neb. 495; *Blank v. German*, 5 Watts & S. 36; *Woonsocket Rubber Co. v. Falley*, 30 Fed. Rep. 808; *Thompson v. Parker*, 83 Ind. 96.

If the transactions were valid the garnishees should have been held for the money remaining in their hands unapplied when garnisheed, and also for that misapplied. For until the general creditors assent to the transfer, and look to the garnishees alone for payment, and discharge the original debtor, the property in the hands of the garnishees still belongs to the debtor, and a creditor can garnishee it in their hands. 1 Parsons on Cont. 217; *Murphy v. Hanrahan*, 50 Wis. 485, 489; *Lynch v. Austin*, 51 id. 287; *Guichard v. Brande*, 57 id. 534; *Hartman v. Olvera*, 54 Cal. 61; 2 Saunder's Pl. & Ev. 373; *Huntley v. Stone*, 4 Wis. 91; *Putney v. Farnham*, 27 id. 187; *Balliet v. Scott*, 32 id. 174; *Felch v. Eau Pleine L. Co.* 58 id. 431; *Kelly v. Roberts*, 40 N. Y. 432; *Ætna Nat. Bank v. Fourth Nat. Bank*, 46 id. 82; Waples on Attach. 212; Drake on Attach. (6th ed.), sec. 525. When an assignment is made providing for the settlement of debts of certain creditors of the assignor, and some of those creditors refuse to take under the assignment, they can garnishee the assignee, and hold any balance there may be remaining in his hands after settling the claims of the assenting creditors. *Kneeland v. Cowles*, 3 Pin. 316; *Douglas v. Simpson*, 121 Mass. 281; *Everett v. Walcott*, 15 Pick. 97; Waples on Attach. 213; Drake on Attach. (6th ed.), sec. 517a.

For the respondents there was a brief by *J. W. Hiner*, attorney, and *J. W. Bass*, of counsel, and oral argument by *Mr. Bass*.

The following opinion was filed October 9, 1888:

TAYLOR, J. The appellant commenced an action against C. H. Marshall for the recovery of a debt due from him, and in such action garnished *Remington* and *Bass*, alleging that they had property in their hands belonging to Marshall, and that they were indebted to said Marshall. The garnishees denied all liability, and issue was taken upon their answer by the appellant.

The main facts in the case, as they appeared on the trial, are the following: Shortly before this action was commenced Marshall was doing business as a druggist in the city of Fond du Lac. He was embarrassed in his business, and could not pay his debts promptly. He made an absolute sale of his stock in trade, the fixtures in the store, a delivery wagon and mule, and a portion of his accounts, to the garnishees for the sum of $5,500. Immediately after the sale, the garnishees took possession of the goods, etc., and converted them to their own use. The contract was in writing, and reads as follows:

"For value received, I do hereby sell, transfer, and assign to L. J. Remington & Co. (a firm of copartners composed of *L. J. Remington* and *James W. Bass*), of Fond du Lac, Wisconsin, all my right, title, and interest in and to the stock of drugs, cigars, and all other merchandise being in the building at No. 486 Main street, in the city of Fond du Lac, Wis., and appertaining to said business; and also all fixtures, show-cases, furniture, books, curtains, signs, apparatus, tools, and all other personal property now in said building or connected therewith, or appertaining to or used in the business heretofore carried on by me at said 486 Main street; also the large soda fountain now in said store,

and all the soda fountain apparatus, and parts of soda fountain in said building; also one soda fountain and all the apparatus connected therewith, in the possession of D. Greenway, at Green Lake, Wis.; also the dray wagon and span of mules, and the harnesses used with them,— being the two largest of my mules, and the ones used in draying in connection with said store; and five barrels of benzine, and all the empty barrels, forty in number, now in the oil-shed used by me on Cherry street, on R. R. track; also all accounts and claims owing me by other parties in my books of account at said store, except a list of accounts excepted therefrom and retained by me, which list is in the hand-writing of said *Remington*, and marked ' Schedule A,' and in my possession, and of which said Remington & Co. have a duplicate; also the iron safe in said store; and I guaranty that I am the owner of all of said property, and that the same is clear of all incumbrance whatever, except a claim of W. W. Clark for five hundred dollars and interest,— to have and hold the same to the said L. J. Remington & Co., and their assigns forever.

"*Dated October 24, 1887.*    C. H. MARSHALL.    [Seal.]

"Signed, sealed, and delivered in the presence of C. K. PIER.

"In consideration of the purchase of the stock of C. H. Marshall, and the bill of sale this day executed by him to L. J. Remington & Co. (a firm of partners consisting of *L. J. Remington* and *J. W. Bass),* we agree to pay $5,500 upon the indebtedness of C. H. Marshall, as specified in Schedules B and C, hereto annexed; the debts in said Schedule C to be paid in full, and the balance to be paid on the debts mentioned in Schedule B, as far as it will pay same; and the said debts in Schedule B may be settled in the order and at such figures as said L. J. Remington & Co. may choose; and any balance left of said $5,500, after such payment and settlement of the debts in said schedules, shall

be applied on a further debt of $200, owing C. H. Benton by said Marshall, or otherwise as said Marshall shall direct, after paying *J. W. Bass* for his expense and legal services in settling same.             L. J. REMINGTON & Co.

"*Dated October 24, 1887.*"

The claim of the appellant was placed in Schedule B, and was stated to be $524. The evidence in the case shows its claim was considerably larger, but it also appears from the evidence that Marshall insisted in good faith, at the time of the sale and when the schedule was made, that he had a valid defense to any claim of the said appellant beyond the sum of $524. The evidence on the trial also shows that the respondents, the garnishees, paid and settled all the claims mentioned in said schedules except the claim of the appellant, and one other small claim of about $218 scheduled to Casse, Lackey & Co. All the creditors in Schedule B have been settled with, and their claims discharged, except the claim of plaintiff and of Casse, Lackey & Co. The claims in Schedule B were not paid in full, but they were satisfied by paying from seventy-five cents and upwards to payments in full. The payment of the creditors in Schedule C in full, and those in Schedule B, except the appellant and Casse, Lackey & Co., at the rate above stated, has exhausted the said sum of $5,500, except the sum of $682.57, and perhaps the sum of $75, an overcharge, making in all $757.57, which was still in the hands of the garnishees when the garnishee papers were served on them. There is also a claim made that they paid for rent $54.33, without authority. Whether they should be charged with this sum paid for rent will depend upon the question whether it was paid before the garnishee papers were served on them, and whether paid with the consent of Marshall. In the view we have taken of the case, if this rent money was paid before the garnishee proceedings were commenced, and

with the approval of Marshall, then it is not subject to the garnishee process.

The learned counsel for the appellant claims that the contract of sale is upon its face fraudulent in law, and therefore void; and if not fraudulent in law, then, under the evidence, the sale was void, for the reason that it was made with the intent to hinder and delay the creditors of Marshall in the collection of their debts. It is claimed to be fraudulent in law, because upon its face it is a voluntary assignment for the benefit of creditors, and consequently void because not made in the manner prescribed by the law, and because it prefers some of the creditors over others. We think this objection is not well taken. It is neither an assignment in form nor in substance. All it amounts to is a sale of part, and probably the largest part, of the failing debtor's property, to provide a fund for the payment of some of his creditors in full and others in part, and leaving others not provided for at all.

Until the legislature shall prescribe a different rule, the old rule must prevail in this state, viz., that an insolvent debtor may, if he sees fit, pay some of his creditors in full and others in part or not at all, without the commission of any fraud in the law upon those creditors not paid. This question has been so recently and fully considered by this court in the cases of *Landauer v. Vietor*, 69 Wis. 434, 440, and *Ingram v. Osborn*, 70 Wis. 184, and cases cited in the opinions in these cases, that it is unnecessary to further discuss the question in this case. The fact that the consideration agreed to be paid for the goods was to be paid to the debtor's creditors, rather than to the debtor himself, is certainly a more favorable sale for them than if the consideration had been paid to the insolvent debtor. The evidence in the case shows very clearly that no fraud in fact was intended upon the creditors by either of the parties to the contract. It was probably much better for those creditors.

who were to receive their pay in full or in part from the purchase price that the debtor consented that it should be so paid, instead of being paid to their debtor, Marshall. The purchasers were diligent in making their payments, and it cannot be charged to them as a fraud that they induced the creditors or some of them to release their claims without a full payment of their debts, so long as they were at all times ready and willing to pay out the whole $5,500 in satisfaction of such debts. We think the transaction was a fair one, and, so far as the evidence shows, was not tainted with any fraudulent purpose on the part of the garnishees or on the part of the debtor.

We are, however, of the opinion that the court erred in holding that no part of the purchase money remaining in the hands of the garnishees and not paid to the other creditors when the garnishee proceedings were commenced, was subject to the garnishee process. The court seems to have proceeded upon the theory that because by the original contract, the right was reserved to the vendees to pay the purchase price to the creditors of the vendor, there could under no circumstances be anything due from the garnishees to their vendor. This we think was error. It is evident that the creditors were not bound by this bargain between their debtor and his vendees. They might refuse to accept pay from the vendees if they chose so to do, and, if their debtor had been a responsible person, there was nothing in the contract between him and his vendees which would prevent them from recovering and collecting their demands from him personally. Suppose the creditors refusing to take pay of the garnishees had collected their debts of Marshall, what would be the situation of the vendees as to the purchase money, after the debtor had been compelled to pay such debts out of his other property? It seems clear to us that in such case the unpaid purchase money in the hands of the vendees would, both at law and in equity, be due to the vendor.

Now, the facts in this case show that all the debts the garnishees agreed to pay have been paid, with the exception of the debt of the appellant and another debt of $218 due to Casse, Lackey & Co.; and it also appears that they had in their hands something like $700, which they cannot pay to these two creditors, because they refuse to receive it under the contract made between their debtor and the garnishees. In that state of the case it seems clear to us that the balance of the purchase money not paid out, and which cannot be paid out under the contract, belongs to the vendor, and is subject to garnishment by his creditors. Any other construction of the contract would compel the creditors to assent to the contract made between their debtor and his vendees, the respondents, or permit their debtor to place his property beyond their reach by a donation of it to these vendees.

There may be a good reason why the creditors of Marshall refuse to take their pay of the garnishees. Possibly, and probably, the garnishees might and did insist on a release of their entire debt on the payment of a part of it. Certainly the garnishees have no right to insist upon such release upon part payment. The creditors are clearly at liberty to pursue Marshall for their entire claim, and by so doing they release the garnishees from any implied obligation on their part to pay them the money remaining in their hands as part of the purchase price of the goods sold to them by Marshall. The rights of all the other creditors named in the schedules having been extinguished, the garnishees must either pay these debts to the extent of the money in their hands or refund the money to Marshall. They cannot pay these creditors directly, because they refuse to receive pay from them, probably because coupled with a condition they are not bound to yield to. This money remains in their hands unappropriated under the contract, and should be paid over to Marshall or to his

creditors upon their garnishment. In a contract of the kind made between the garnishees and Marshall, there is an implied agreement that if the creditors of the vendor refuse to accept payment of the vendees, or collect their debts out of the other property of the vendor, then the purchase money shall be paid directly to the vendor. The carrying out of such a contract of sale depends upon the assent of the creditors whose debts are attempted to be provided for, and when that assent cannot be obtained, there is an implied obligation on the part of the vendees to pay the purchase price to the vendor. The law will not presume that the purchase price should not be paid if the creditors of the vendor refuse to receive their pay from the vendees, and pursue him for their debts.

In fact, it is at least doubtful whether the contract shows upon its face that the vendees have any pecuniary interest in the payment of the purchase money to the creditors of their vendor, and consequently any creditor of the vendor might divert the payment to himself by a garnishment of the money in the hands of the vendees at any time before they had paid out the same under their contract, and the vendor himself might, before the creditors had been notified of the terms of the sale and had accepted the same, have ordered the vendees to pay the money to himself or to some other parties. Upon this subject see *Drake v. Harrison*, 69 Wis. 99, 109, and cases cited. We do not, however, put our decision in this case upon that interpretation of the contract. We think the liability of the garnishees to their vendor for the balance of the unpaid purchase money in their hands arises from the fact that they are prevented from paying it out in the manner prescribed by the contract. The money is therefore as much the money of the vendor as though the vendees had settled all the claims mentioned in the contract, and there had been a surplus unexpended in making such settlement. The very terms of

the contract provide that in such case such surplus shall be paid out under the direction of the vendor. The clear intent of the contract is that any money which cannot be or is not used in the settlement of the specified debts of the vendor shall be the money of the vendor and subject to his order. It will not be contended that the money of a debtor in the hands of a third person, subject to the order of the debtor, cannot be garnished by a creditor of the debtor. In such case the garnishment is equivalent to an order of the debtor.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to enter judgment for the appellant in accordance with this opinion.

The respondents moved for a rehearing. The following opinion was filed December 4, 1888:

TAYLOR, J. We think the learned counsel for the respondents has failed to understand the exact points decided by the opinion filed in this case. It certainly was not the intention of this court to direct a judgment which would make the respondents liable to the appellant in this case, or to any other creditor or creditors of their vendor, for any amount beyond the sum they had agreed to pay for the goods bought of him. What was decided is that the respondents must pay over in this garnishee proceeding, to the appellant, such part of the purchase money as remained in their hands at the time the garnishee proceedings were served upon them, and which they had not then appropriated to the payment of the debts of their vendor. When they pay over to the appellant the money in their hands not already applied as above stated, they will have done what is required by this court. We understand the appellant in this case served its garnishee process before

any other garnishee process was served on respondents. If, therefore, it requires all the balance of the purchase money in their hands to satisfy the demand of the appellant, that fact will probably be a full answer to the claims of those who have subsequent garnishment proceedings pending against them. We fail to comprehend how the judgment rendered in this case, when properly understood, can do any injustice to the respondents.

*By the Court.*— The motion for a rehearing is denied with $25 costs.