[Civ. No. 6019. Second Appellate District, Division Two.—June 5, 1930.]

W. E. STEINECK, Appellant, v. HAAS–BARUCH COMPANY (a Corporation), Respondent.

A. B. Edler for Appellant.

L. A. Lewis for Respondent.

GATES, J., *pro tem.*—This is a suit to recover money which appellant contends had been attached while in the possession of a garnishee, respondent herein. The cause was submitted to the trial court upon a written stipulation of facts.

One Simon, prior to March, 1924, was the owner of a certain grocery store, stock and fixtures. On February 28, 1924, he sold the store to E. L. Simmons and gave the customary notice of sale. Between February 28th and March 10th of the same year respondent received $2,500 in trust to pay creditors of Simon, as the purchase price of said groceries and fixtures. On March 5, 1924, respondent was notified by the attorney for N. Diamantes, appellant's assignor and original owner of the claim sued upon, that there was due and owing from Simon to Diamantes $500 for labor. On March 10th, respondent received instructions from Simon to disburse the money held by it to creditors other than N.

Diamantes. On March 20, 1924, appellant, as assignee of Diamantes, brought suit against Simon upon the identical claim upon which demand had theretofore been made. On March 21st an attachment was issued out of the Superior Court and was served upon respondent the same day, whereupon the latter made the following return:

"That I am indebted in the sum of No Dollars; but that I have in my possession and under my control personal property belonging to said defendant, to-wit: money held in trust with instructions to pay to his certain creditors.

"HAAS-BARUCH COMPANY.

"By C. V. McMANNAMY, Cr. Mgr."

A motion to discharge said attachment was made and denied. Later, the respondent corporation, C. V. McMannamy and Simon appeared in the Superior Court in response to a citation and were examined under oath as to money held by respondent belonging to Simon. At the conclusion of such hearing the court ordered McMannamy "Discharged." The minute order as made stated: "Garnishment discharged and Defendant discharged." After the filing of the instant suit this minute order was changed by the court to read: "Garnishee discharged and Defendant discharged." Respondent herein had no notice or knowledge of the application to the court to change the minute order. The corporation, however, after securing a copy of the minute order as originally made, did on or about the month of September, 1924, pay the $2,500 to the designated creditors of Simon, other than the appellant herein. No motion for the discharge of any attachment had been filed when respondent and the other named parties appeared before the court. Thereafter plaintiff herein recovered from Simon a judgment for $650 plus interest and costs, in the same action in which an attachment was served upon the respondent here. Execution was duly had and served upon the corporation, whose return showed that all moneys held by it belonging to Simon had been paid to certain designated creditors, and that it held no moneys belonging to Simon.

There is no merit in the appellant's contention that the minute order made by the court dissolved any attachment lien that appellant might have had on the money as a result of the levy made by the sheriff. The order made by the court did not purport to nor did it dissolve any attachment lien.

The effect of this minute order was to excuse or discharge the respondent from further attendance in the matter. (*Ogden* v. *Mills*, 3 Cal. 253.)

 "The term garnishment, as used today, means a proceeding or process whereby the property, money or credits of one person, generally called the debtor, and in the possession of or owing by another, generally designated the garnishee, are applied to the payment of the debt of the debtor, by means of process issuing against the debtor and the garnishee. Garnishment is, therefore, an attachment of the effects of the defendant in the garnishee's hands, differing in no essential respect from attachment by levy, except, as is said, that the plaintiff does not acquire a clear and full lien upon the specific property in the garnishee's possession, *but only the right to hold the garnishee personally liable for it or its value.*" (13 Cal. Jur. 3; *Finch* v. *Finch,* 12 Cal. App. 274 [107 Pac. 594].) (Italics ours.) "The right to maintain garnishment proceedings exists only where the defendant or party against whom judgment has been rendered would have had a cause of action under the practice at common law in debt or *indebitatus assumpsit,* against the garnishee." (13 Cal. Jur. 3, 4; *Hassie* v. *God Is With Us Congregation,* 35 Cal. 378; *Marshall* v. *Wentz,* 28 Cal. App. 540 [153 Pac. 244]; *Aigeltinger Co.* v. *Healy-Tibbitts Co.,* 23 Cal. App. 608 [139 Pac. 436]; *Donohoe-Kelly Banking Co.* v. *Southern Pacific Co.,* 138 Cal. 183 [94 Am. St. Rep. 28, 71 Pac. 93].) However, this rule has been somewhat extended, as may be seen by examining *Brainard* v. *Rogers,* 74 Cal. App. 247 [239 Pac. 1095], which, among other things, holds: "Moneys which are owing the debtor, though not yet due, are subject to garnishment, because the term 'owing' includes an immature as well as a mature obligation."

The limits as well as the basis of a garnishee's liability to an attaching creditor is stated in *American Exchange National Bank* v. *Superior Court,* 29 Cal. App. 8, 11 [154 Pac. 279], as follows: "A garnishee's liability in the case of a debt due from him is grounded upon and is limited by his liability to the defendant in the principal action whereby the latter has at the time of the garnishment a cause of action, present or future, against him. (Drake on Attachment, 7th ed., sec. 463.)" This principle is clearly illustrated in *Marshall* v. *Wentz, supra.* The District Court of Appeal in

that case, among other things, said: "In *Hassie* v. *God Is With Us Congregation,* 35 Cal. 378, it is said: 'If, at the time the attachment was served upon the garnishee, the defendant in the attachment could have maintained against him, under the practice at common law, an action of debt or *indebitatus assumpsit,* then the liability of the garnishee is transferred from the defendant to the plaintiff in the attachment suit.' . . . 'Whenever there is a legal liability the law creates a promise upon which an action of *assumpsit* will lie.' " However, it may be said that the liability of the garnishee is to be determined as of the time of the service of the writ. (*Nordstrom* v. *Corona City Water Co.*, 155 Cal. 206 [132 Am. St. Rep. 81, 100 Pac. 242]; 28 C. J. 243.) The garnishee will only be held for the debts then owing at the time of the service of the writ. (*Norris* v. *Burgoyne,* 4 Cal. 409; *Johnson* v. *Carry,* 2 Cal. 33.) Therefore, any right that appellant may have had against respondent became fixed as of the date of the levy of the attachment.

Can it be said that the respondent herein did, on the twenty-first day of March, 1924, the date of the levy of the attachment or garnishment, have in its possession or under its control any credits or other personal property belonging to the defendant, Simon, or did it owe him any debts or any money? (Sec. 542, Code Civ. Proc.) Respondent's return to the writ of attachment of the sheriff compels us to answer in the negative. The return is conclusive as it shows plainly that respondent is not indebted to Simon in any sum, and that the only property it had was being held in trust for certain creditors. Any claim or right that Simon had in or to said money was subject to and subservient to the trust agreement. Simon divested himself of any legal claim to the money that he might have had. So long as the trust continued to exist he could not successfully maintain an action against respondent for the recovery of the money or any part of it. (13 Cal. Jur. 4, sec. 4, and cases there cited.) The $2,500 had been placed in respondent's control for a definite and specific purpose, to wit, for the payment of certain creditors of Simon. Subsequent events clearly show that respondent fully executed the trust mentioned by paying out the $2,500 to certain creditors.

As a general proposition of law it is well settled that a disposition of money in trust takes priority over subsequent

garnishment. (28 C. J. 120.) It is also well settled that a surplus or balance remaining in the hands of a trustee after the execution of a trust created by the defendant may be reached by a garnishment, unless such surplus has been assigned. (*Giles* v. *Ash*, 123 Mass. 353; *New England M. Ins. Co.* v. *Chandler*, 16 Mass. 274; *Sands* v. *Sydnor*, 88 Mo. App. 54; 28 C. J. 124.) And likewise if there were, for any reason, a failure of a trust so created the funds covered thereby could be reached by attachment. (*Hungerford* v. *Greengard*, 95 Mo. App. 653 [69 S. W. 602]; *Chesley* v. *Coombs*, 58 N. H. 142; *Greene etc.* v. *Marshall*, 72 Wis. 648 [39 N. W. 767, 40 N. W. 643].)

The authorities are somewhat divided upon the question as to whether garnishment lies prior to the termination of the express trust and the accrual of a dry resulting trust in favor of the assignee to the extent of the surplus. (28 C. J. 125.) In the early case of *Handley* v. *Pfister*, 39 Cal. 283 [2 Am. Rep. 449], our Supreme Court intimated that a garnishment levied prior to the termination of an express trust was proper. The basic facts in that case are somewhat similar to the facts in the instant proceeding. The court there said: "The rights acquired by the appellants to the fund in question, through the levy of their writ of attachment, are precisely those which Fitzgerald, their debtor, had at the time of the levy. This was a right to the overplus remaining after the payment of these debts; but there was no overplus. . . . The steps taken by him to provide the means for their payment were such as the law permitted him to pursue; and when he, with the assent of these other creditors, placed this property in the hands of the respondent, with instructions to sell it and pay himself and them out of the proceeds, the respondent and those he represents obtained a lien upon it and its proceeds superior to any which the appellants could acquire by the subsequent levy of their process thereon. The authority to Handley to sell, and apply the proceeds to the payment of his own debt, was, in law, irrevocable by Fitzgerald, and would continue while the debt should subsist. And as having, with the assent of the other creditors associated with him, undertaken to apply these proceeds in part to the payment of these debts, the respondent became clothed with a power, coupled with a trust, for the benefit of those others, and which he was not at

liberty to relinquish until these debts should have become, in some manner, discharged.'' (Citing cases.) We think the true rule to be deduced from the authorities is that where a creditor garnishees a trustee who holds funds pursuant to an express trust, and it is shown by the plaintiff that the trustee has a surplus on hand—an amount over and above that required to execute the terms of the trust—that he, the trustee, will be obligated in law to such attaching creditor in an amount to which the creditor is entitled, not exceeding the surplus in the hands of the trustee. (*Younkin* v. *Collier et al.*, 47 Fed. 571; *Handley* v. *Pfister, supra.*) The foregoing principle, however, has no application in the instant case for the reason that there was not any balance or surplus, as all of the money deposited with respondent had been disbursed pursuant to the terms of the trust.

Judgment affirmed.

THOMPSON (IRA F.), J.—I concur. The agreed statement of facts recites that the fund was held in trust. That being so, the attaching creditor secured no superior rights.

Craig, Acting, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 2, 1930.