[Civ. No. 40321. Second Dist., Div. Five. July 5, 1973.]

LOS ANGELES COUNTY EMPLOYEES UNION, LOCAL 434 et al., Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

## Counsel

Geffner & Satzman and Michael P. Posner for Plaintiffs and Appellants.

John D. Maharg, County Counsel, Fred W. Clough and Daniel C. Cassidy, Deputy County Counsel, for Defendants and Respondents.

## Opinion

KAUS, P. J.—Petitioners appeal from a judgment which denied them a peremptory writ of mandate.

### Facts

As will be seen the only dispute concerning the facts is orismological. What actually happened is common ground.

Petitioner Flossie Bertram is an employee of the respendent county.[1] Petitioner Los Angeles County Employees Union ("Union") is the certified bargaining agent for certain county employees, including Flossie Bertram. It joined in the petition in its own behalf and on behalf of its members whose interests are affected by the procedures of which Bertram complains and which we are about to relate.

The amount of compensation to which Bertram was entitled was governed, in part, by a salary ordinance of the county, referred to by the parties as "section 231." Speaking generally, this ordinance determined the amount of compensation due to an employee who suffers an industrial injury which "the Director of Personnel or the Workmen's Compensation Appeals Board determines to be compensable." Subsection (3)(a) of the ordinance provides that when an employee is absent as a result of such an injury he "shall receive compensation equal to the difference between his base salary and the sum of the benefits prescribed by the workmen's compensation laws . . . when such sum is less than his base salary." Subsection (3)(d) provides "[n]o deductions will be made from any vacation time, sick leave . . . previously accumulated by the employee while the employee is absent on a compensable industrial injury leave."

Bertram received an industrial injury some time in 1968. As a result of the injury she was unable to work for various relatively short periods of time. The county at first disputed the industrial nature of the injury and debited her absences against accumulated sick leave and vacation benefits. Later, however, the county's compensation carrier conceded that the injury was industrial and started to furnish benefits. On August 25, 1970, Bertram received payment from the carrier in the sum of $274.94 "for various absences . . . from July 18, 1968 to July 13, 1970." This figure was greater than the amount due Bertram on the salary warrant which would have been issued to her on September 25, 1970. The county paid her nothing on that day. Her next salary warrant was due on October 9. The balance of the $274.94 was deducted from the day's warrant. No hearing of any kind preceded this procedure.

In what amounts to the charging allegation of her petition, Bertram claims that in thus proceeding respondents "failed, neglected and have refused to provide FLOSSIE BERTRAM with an accounting as to why they were entitled to the funds they withheld, or how they arrived at the amount

---

[1]The petition also named the county's board of supervisors, the individual members thereof and the county auditor-controller, as respondents. They appeared together with the county. For practical purposes they may be ignored.

withheld from her salary. Respondents, and each of them, unilaterally determined that they were entitled to the $274.94, and without securing a judgment or Court Order of any kind, deducted Petitioner's entire salary due on September 25, 1970 and a portion of Petitioner's salary due on October 9, 1970."

In a second cause of action Bertram complains that the county's procedure violated former section 690.11 of the Code of Civil Procedure in that it was an attachment of more than 50 percent of her earnings without notice as then provided by the statute and, further, in that she was denied the right to seek statutory exemptions.

The petition prays for a writ of mandate compelling the county to pay Bertram $274.94, a permanent injunction against the utilization of similar procedures against her and other county employees "similarly situated," an injunction ordering the county to revise its procedures "so that the payment of wages due County employees for services rendered will in the future no longer be unilaterally attached and withheld, unless and until an accounting be made and proper Court Orders be first obtained," and, finally, an injunction to comply with then section 690.11 of the Code of Civil Procedure in the future.

## DISCUSSION

■ The seriousness with which this petition is being urged indicates that it is the culmination of certain grievances between the Union and the county with respect to certain payroll procedures. However, petitioners' persistent mislabeling of the procedures involved in this case persuades us that they have chosen a poor vehicle for the ventilation of their problems. To illustrate and to dispose of the second cause of action at the same time: whatever the county did with respect to the two salary warrants in issue, it was not a garnishment of Bertram's wages. Rightfully or wrongfully, the county paid Bertram less than she claims she should have received on the two dates in question. ■ A garnishment, however, is the attachment by a third person of debts owing to the attachment debtor by the garnishee. (*Kimball* v. *Richardson-Kimball Co.*, 111 Cal. 386, 393 [43 P. 1111]; *Steineck* v. *Haas-Baruch Co.*, 106 Cal.App. 228, 231 [288 P. 1104].) Thus, whatever grievances relating to the county's handling of third party levies on employees' salaries may lurk in the background of this litigation, the union and its members simply cannot use Bertram's problems to air them.

■ Adverting to the first cause of action, the same picture appears,

though it is perhaps a little more complicated. Thus petitioners in their pleadings and arguments consistently claim that the county "withheld" or "deducted" the $274.94, thereby making it appear that by paying her less than her base salary, the county used self-help in collecting a debt of $274.94 from one of its employees. The reason for adopting this view is clear: it serves as a springboard for an argument that the county's procedure violates the principle recognized and applied in *Sniadach* v. *Family Finance Corp.*, 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820] and its successors. (E.g., *Fuentes* v. *Shevin,* 407 U.S. 67 [32 L.Ed.2d 556, 92 S.Ct. 1983]; *Blair* v. *Pitchess,* 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]; *Randone* v. *Appellate Department,* 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13]; *McCallop* v. *Carberry,* 1 Cal.3d 903 [83 Cal.Rptr. 666, 464 P.2d 122].) These cases invalidate, on due process grounds, various state-sponsored get-paid-quick schemes, beneficial to self-proclaimed creditors, but devastating in their procedural impact on the alleged debtors.[2]

The record, however, shows that the county did not "withhold" anything. Section 231, the salary ordinance, does not provide—as the tone of petitioners' argument suggests—that an employee who has received an industrial injury shall continue to be paid his base salary, subject to a duty to refund compensation payments received from the carrier. To the contrary, subsection (3)(a) specifically fixes the salary earned as "the difference between [the employee's] base salary and the sum of the benefits prescribed by the workmen's compensation laws . . ." The figure of $274.94 thus became relevant in the determination of Bertram's pay only in that it was a figure which the person or computer who made up the payroll had to consider in determining how much she had earned. Its significance was purely mathematical, not differing from that of many other figures which affect the calculation.[3]

---

[2]Petitioners do not dispute that Bertram actually received every penny she had coming from the county. They only attack the procedure by which the county determined the correct amount without granting her a right to be heard. She is, nevertheless, entitled to a judicial determination of the constitutional validity of the county's procedures. (*Fuentes* v. *Shevin, supra,* 407 U.S. 67, 87 [32 L.Ed.2d 556, 574].)

[3]Of course the dimension of time clouds the picture somewhat. Apparently there was a dispute concerning the industrial nature of Bertram's injuries and her absences were initially charged against her accumulated sick leave and vacation time. The matter was not adjusted for about two years. Had there been no dispute the carrier would have paid her sums aggregating $274.94 shortly after each absence from work and the calculations to determine the amount of salary due under subsection (3)(a) would have been made several times, rather than only once in the fall of 1970. Clearly, however, Bertram suffered no detriment from the delay. Indeed she claims none. As noted, her petition merely attacks the county's unilateral way of proceeding.

Petitioner's reliance on _Sniadach_ thus rests on an erroneous premise. They portray Bertram as an employee who wore two hats: first, she was a creditor to whom the county owed—and presumably was willing to pay— her normal base salary, even though she was absent due to an industrial injury; second, she was a debtor to the tune of $274.94 from whom the county—a subdivision of the state—took that sum without giving her an opportunity to be heard on the rightfulness of the taking.[4]

Clearly, however, the basic assumption of the "two-hat" theory—that the county ever owed Bertram her full base salary for the periods in question—is unjustified by the terms of section 231(3)(a). The fact is that the county never owed her more than she actually received and that she never owed the $274.94 to the county, which thus never was a creditor. _Sniadach_ is beside the point.

Viewed in its true light, what the petition claims is that before the state, as an employer, can issue a payroll check to one of its employees, the employee must be given a hearing on the amount payable. No authority of which we are aware supports such an assertion.

We need not guess whether petitioners' erroneous framing of the issue would aid them, were we to accept it. It is, however, not impertinent to suggest that most legal principles have an innate capacity to self-destruct when applied to situations not visualized at the time of their formulation. To press _Sniadach_ to the breaking point may well provoke the carving out of exceptions which, in turn, could be so broadly applied that all that is left of its principle is the smile.[5]

The judgment is affirmed.

Ashby, J., and Hastings, J., concurred.

---

[4]For obvious reasons we need not discuss one of the county's arguments—that petitioners' grievance does not involve state action.

[5]Obviously approaches to a disembowelment of _Sniadach_ include: 1. refinements of the meaning of "property"; 2. redefinitions of the concept of "taking"; and 3. a reappraisal of the perimeter of "state action" in the context of the due process clause.