## S. & E. TRAVIS v. TARTT.

1. A proceeding by garnishment is the institution of a suit by the attaching creditor, against the debtor of his debtor, and is governed by the general rules applicable to other suits adapted to the relative position of the parties.

2. When one of a firm is garnisheed the creditor must be considered as electing to proceed against him solely, and on his answer, admitting the indebtedness of the firm, is entitled to have judgment against him.

3. A suit commenced against one partner of a firm, will survive against his personal representatives, and may be revived against them by *sci. fa.*

4. When the creditor omits to proceed against the personal representatives of one deceased for eighteen months, and omits also for the same time to present his claim, the statute of non claim is a good bar to the *sci. fa.*

5. If this defence is asserted by answer, instead of plea to the *sci. fa.* the plaintiff should demur, but the Court ought not, without action by the plaintiff, render a judgment on the *sci. fa.*, disregarding the answer.

Writ of error to the Circuit Court of Sumter.

BROWNRIGG & TARTT sued out an attachment against one Hodges, returnable to the fall term of the Circuit Court for the year 1839. The return is, that no property was found, but Enoch Travis was summoned as a garnishee. At the return term Travis appeared and filed his answer, by which he admits that himself and brother, Seaborn Travis, as partners, jointly purchased a tract of land from Hodges, for which they gave their joint promissory notes, signed S. & E. Travis; one of them due 1st day of March, 1840, for $1,850, or thereabouts; the other for the same amount, due 1st March, 1841. These notes were payable to Hodges, and delivered to him, and Hodges afterwards delivered them to his wife, by whom, as the garnishee believed, they were taken to North Carolina. What then became of them, the garnishee did not know, but he believed they continued in the possession of Mrs. Hodges.

No further proceedings in the cause appear to have been taken until the spring term, 1842, when it was suggested that Travis, the garnishee, had died since the filing of his answer, and a *sci.*

*fa.* was ordered to Seaborn Travis, the legal representative of the said garnishee.

At the fall term of the same year, the order for *sci. fa.* was renewed, as it also was at the spring term, 1843, but in both instances to Seaborn Travis, as the administrator upon the estate of Enoch Travis, deceased. Upon this a *sci. fa.* issued but was returned not found. At the fall term 1843, an *alias sci. fa.* was ordered to issue to Seaborn Travis ; and in the vacation one issued to Seaborn Travis and Amos Travis, jr., as executors of the last will and testament of Enoch Travis, deceased, to appear and show cause why they should not be made parties, and judgment rendered against them. This *sci. fa.* is returned executed, and at the spring term, 1844, Amos Travis, as executor of Enoch Travis, appeared and filed an answer, in which he admits the appointment and qualification of himself and Seaborn Travis as executors, but asserts that they were qualified in the spring of the year 1841, and that the debt in this behalf was not presented to either of the executors within eighteen months after the grant of letters testamentary. He denies that Enoch Travis was indebted to Hodges, except as partner in the firm of S. & E. Travis, and that the indebtedness of that firm survived to Seaborn Travis, and is not due from the executors of the deceased partner. He also asserts his information, that the debt to Hodges has been paid by Seaborn Travis, in his character of surviving partner.

The Court, upon the appearance by attorney, of both the executors, as is stated in the judgment entry, and upon the answer of Enoch Travis, which was filed at the return of the attachment, rendered judgment against the defendant in attachment, and afterwards against the executors of Enoch Travis, of condemnation of the monies due from S. & E. Travis to Hodges, to the amount of the judgment and costs, and awarded execution to be levied *de bonis testatoris.*

The executors of Travis now assign several errors in the proceedings of the Court below, but of which the principal are—1. That the suit is not such as survived against the personal representatives. 2. That the claim, when sought to be enforced against the executors, was barred by the statute of *non claim.*

E. W. Peck and L. Clark, for the plaintiffs in error.

S. & E. Travis v. Tartt.

R. H. SMITH, contra, cited Aikin's Digest, 259, § 1, upon the survivorship. A garnishment is a legal suit, and governed by the same general rules as any other suit. [Thomas v. Hopper, 5 Ala. Rep. 442.]

The defence of non-claim cannot be allowed under the circumstances of this cause—1. Because the plaintiff in attachment had not the evidence of the debt within his power, so as to be able to present it. 2. Because the service of the *sci. fa.* relates back to the service of the garnishment, and binds the estate from that time. 3. Because the right of the plaintiff was initiate by the attachment, which stopped the debt, which thereby was placed within the custody of the Court. [Dore v. Dawson, 6 Ala. Rep. 712.]

GOLDTHWAITE, J.—1. The proceeding by garnishment in point of law is the institution of a suit in which the creditor is permitted to proceed against the debtor of his debtor, and therefore would seem to be governed by the general rules applicable to other suits. [Thomas v. Hopper, 5 Ala. Rep. 442.] But in the ancillary suits which grow out of the attachment laws, the proceedings, when not prescribed by the statutes must, to a great extent be adapted to the condition and relative position of the parties. [See Goodwin v. Brooks, 6 Ala. Rep. 836; Graves v. Cooper, at this term; Myatt v. Lockhart, Ib.]

2. We may consider this suit then, as instituted by the plaintiffs in attachment, through the medium of their debtor, against Enoch Travis, and the question arises on his answer, if a judgment could properly be rendered against him, upon the disclosure that he was indebted, as one of a partnership firm, to the defendant in attachment. The act of 1818 provides, that whenever any cause of action may exist against two or more partners, of any denomination whatever, it shall be lawful to prosecute an action against any one or more of them; and when a writ shall be issued against all the partners of a firm, service of the same upon any one of them, shall be deemed equivalent to a service on all. Here the garnishment is issued against one partner only, and therefore the plaintiffs must be considered as having elected to proceed against him solely, and we think it clear they were entitled to have judgment against him upon his answer; but after that was made, and before any judgment rendered upon it, his death intervened, and

therefore the further question arises, whether the suit survives, and was properly revived against his personal representatives.

3. It will be observed the statute does profess to change the liability of partners from joint to joint, and several; it allows the privilege of sueing each *partner* and provides that a service on one shall be equivalent to a service on all. As the statute neither directs that a suit, when once commenced, shall or shall not survive, we must look to the probable intention, to be ascertained in the first instance from the act itself, and beyond it from the then existing law. As the privilege is given the creditor, of considering the service on one as bringing all the partners before the Court, the other clause, which warrants a suit against one only, would seem to be entirely useless, unless such suit, when commenced, would survive, and might be prosecuted against the personal representatives. It is true, that by the common law, upon the death of a partner, the remedy was gone, at law, against his personal representatives, but in equity the liability was held to continue, and, it is said, could be enforced by bill, whether the survivors were solvent or otherwise. [Story on Part. 514, and cases there cited.] Indeed, in this respect, it is now recognized as the well settled doctrine, that there is no distinction between the debts due from partners, and those due from other joint debtors. In equity, all are considered as joint and several, and the creditor may pursue the personal representative of the deceased joint debtor, or partner, whether the survivors are insolvent or otherwise. [Devaynes v. Noble, 1 Mer. 529; Story's Eq. § 676, and cases there cited.] It is true, in Marr v. Southwick, 2 Porter, 351, it was considered by this Court, that a creditor could not pursue the personal representatives of a deceased partner, in equity, without alledging and proving the insolvency of the survivor; but it is there conceded, that if suit was commenced, under the statute, against one of a partnership, it would survive against his personal representatives. See also, as bearing on this subject Von Pheel v. Connelly, 9 Porter, 452; Trann v. Gorman, Ib. 456; Bartlett v. Lang, 2 Ala. Rep. 404; Bean v. Cabbiness, 6 Ib. 343.] The remedy at law, under the act previously cited, was further extended by an act passed in 1839, which gives the right to creditors to sue and recover their demands at law, of the personal representative of a deceased partner, without having first prosecuted the survivor to insolvency. The act is limited by two provi-

sos, in these terms : "*Provided*, the plaintiff shall, before institut-
ing such suit, make affidavit in writing, before the clerk of the
Court, or Court itself, to be filed with the papers, that the survi-
vor is insolvent, or unable to pay the amount. of the debt ; or is
beyond the jurisdiction of the Court: *Provided, further*, that
when any such representative is sued separately, which may be
done without such affidavit, no execution shall issue against such
representative until an execution is *bona fide* run, and returned
*nulla bona* as to the survivors." The first *proviso* seems to con-
template, that when the suit is commenced against the represen-
tatives of the deceased partner, and no suit at that time is institu-
ted against the survivor, that the affidavit is a pre-requisite ; the
second, that when suit is commenced separately against the re-
presentative of the deceased partner, and the survivors at the same
time, the affidavit is not necessary, but no execution can be taken
out until one is made. From this review of the legislation and
the decisions bearing upon this subject, we come to the conclu-
sion that a suit commenced against one partner in his life-time sur-
vives, and may be prosecuted against his personal representatives.
It follows therefore, that the *sci. fa.* against the personal repre-
sentatives in this case was proper.

4. In Robinson v. Starr, 3 Stewart, 90, it was held, that a gar-
nishee was not discharged by the omission to take a judgment
against him at the return term, no judgment having then been
had against the defendant. In Leigh v. Smith, 5 Ala. Rep, 583,
a judgment *nunc pro tunc*, was allowed a garnishee several
terms after his answer. See also, Gaines v. Bierne, 3 Ala. Rep.
114 ; Graves v. Cooper, at this term.

It follows from these decisions, that as no judgment was entered
against the garnishee, when he made his answer, it might be
rendered subsequently, whether of the term it was entered, or
*nunc pro tunc* as of the term of his answer ; or at the term after-
wards, when judgment was rendered against the defendant in
attachment. When therefore the personal representatives were
called on by *sci. fa.* to show cause why they should not be made
parties to the proceedings, it was their privilege to show any
cause which existed at that time, to discharge the estate which
they represented. The statute of non claim is one intended not
only for the protection of the administrator, but is also for the
benefit of the heirs and distributees of the decedent. [Thrash v.

Sumwalt, 5 Ala. Rep. 13.] And it is as much a bar to a judgment to which the administrator is not made a party, or which is not presented as a claim to him, as any other demand. Until it is so presented, or until he is made a·party to the judgment, he is not chargeable with it. In Hollinger v. Holley, at this term, we considered another similar statute, and held, that even making the necessary parties, did not dispense with the necessity to file the judgment as a claim in the clerk's office, when the estate was represented insolvent.

If an imperfect judgment exists against the decedent, it certainly is as much the duty of the creditor, asserting that as a claim against his estate, to present it within eighteen months, or to take the necessary measures to bring in the administrator, as if it was a perfect proceeding. The fact that the creditor has no control of the evidence of the original debt, cannot make a distinction, because that is not what he is required to present; that is not his claim; the one which he is invested with, arises out of the proceedings instituted by him. Nor is the fact that a suit is pending, a sufficient reason to withdraw the claim from the influence of the statute. [See King v. Mosely, 5 Ala. Rep. 610.]

5. It is said, however, that this defence is not insisted on in the proper mode, as it is attempted to be raised by the answer of the executors, when it should have been by plea to the *sci, fa.* and it is urged, the answer is no part of the record, which can be looked to for the purpose of reversal.

The English practice is, to declare in *sci, fa.* upon the appearance of the party, and to this declaration the defendant pleads either in abatement or bar, as in other suits. [2 Saund. 72 t.] But with us, the universal practice is, to consider the *sci. fa.* as sufficient, without any declaration upon it. Usually, the controversy is determined upon a motion to quash, or upon a demurrer, but in some cases, such as *sci. fa.* against bail, or upon recognizances, pleas are usual and customary. But we do not think an answer as distinguished from a plea, is so entirely irregular as to warrant the Court in entirely disregarding it. If the plaintiff here wished to raise the question whether this mode of defence was proper, he should have demurred, or otherwise in some manner called the attention of the Court and opposite party to the defectiveness of the pleading. As this was not done, and as the an-

swer contains a substantial matter of defence, in view of the statute of non claim, the judgment cannot be sustained; but must be reversed and remanded for further proceedings.