EMILE MAERTENS *vs.* ALEXANDER W. SCOTT.

JULY 21, 1911.

PRESENT: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

*Garnishment. Stocks. Jurisdiction. Foreign Corporations.*

Shares in a foreign corporation having no duly appointed attorney in this state cannot be reached by garnishment of certificates in the possession of a person in this state.

JOHNSON, J., dissenting.

ASSUMPSIT. Heard on exceptions to decision of Superior Court, overruling demurrer to special plea and overruled.

PARKHURST, J. The plaintiff, a resident of the city of Providence, brought his action in assumpsit against the defendant, a resident of Salt Lake City, in the state of Utah, and sought to secure jurisdiction in this state by attaching his personal estate in the hands of the Rhode Island Hospital Trust Company, a domestic corporation. At the time of the service of the writ there was no personal property or estate in the hands or possession of the said Rhode Island Hospital Trust Company, but there were in its hands and possession

certain certificates of stock in the Scott Mines Company, a Nevada corporation. Said Scott Mines Company had never appointed an attorney in this state for the service of process, and, other than as above stated, there was no further service of process in said suit.

The defendant, thereupon, through his counsel, filed a special appearance for the purpose of determining whether the court, to which the writ was returnable, had any jurisdiction under the above circumstances, and, within the time prescribed by law, filed his plea as follows:

"In the above entitled case the defendant, appearing specially for the purpose of this Plea and for that purpose only, comes and says: That the plaintiff ought not to have or maintain his illegal action aforesaid against the said defendant, because he says that the plaintiff herein is a resident of the City and County of Providence and State of Rhode Island, as appears in the Declaration heretofore filed in the above cause; that the defendant is a resident of Salt Lake City, in the State of Utah; that the only service made upon the defendant in the above case was the sending of an attested copy of the writ in said cause, by mail, addressed to the said defendant at P. O. Box 27, Salt Lake City, in the said State of Utah; that the attachment of the personal estate of the said defendant, commanded by the writ in said cause was sought to be made by leaving an attested copy of said writ, having endorsed thereon the date and time of day of such service, at the office of the Rhode Island Hospital Trust Company, in said City of Providence, in the hands and possession of W. A. Gamwell, the Secretary of said corporation, and by paying him the statutory fee for attendance and travel as such Trustee; that there was no property or estate of the said defendant in the hands or possession of the said trustee at the time of the service of the writ in said cause, but there were in the hands and possession of said trustee standing in the name of the defendant at the time aforesaid, certain certificates of stock of the Scott Mines Company, a

foreign corporation, which corporation is organized under the laws of the State of Nevada; that the said certificates representing shares of stock in the said Scott Mines Company were deposited with said garnishee for the term of one year from the date of deposit, which year expired on November 17, 1909, under and by virtue of a certain agreement in writing between the defendant and others dated September 16, 1908, a copy of which is hereto annexed, made a part hereof and marked "Defendant's Exhibit A;" that said Scott Mines Company has never appointed an agent or attorney with authority to accept service of process against it in said State of Rhode Island, nor for any other purpose therein; and that no other or further attachment or service than as above stated was made in the above cause. And this the defendant is ready to verify. Wherefore he prays judgment whether this Court can or will take further cognizance of the action aforesaid."

The agreement, "Defendant's Exhibit A." annexed to the above plea and made a part thereof reads as follows:

"THIS MEMORANDUM OF AGREEMENT made and entered into this sixteenth day of September, 1908, by and between Alexander W. Scott, of Salt Lake City, Utah, Party of the first part, BOSTON & PIOCHE MINING & DEVELOPMENT COMPANY, a corporation duly organized and existing under the laws of the State of Maine, party of the second part, and the RHODE ISLAND HOSPITAL TRUST COMPANY, a corporation duly organized and existing under the laws of the State of Rhode Island, party of the third part, WITNESSETH:

"WHEREAS, the party of the second part is the owner of certain shares of the capital stock of the Boston & Pioche Mining Company, a corporation duly organized and existing under the laws of the Territory of Arizona, and the party of the first part is willing to buy, and the party of the

second part to sell, certain of said shares, as hereinafter set forth; and

"WHEREAS, the party of the first part is about to organize a mining company as hereinafter set forth, and the party of the second part is willing to exchange the remainder of its shares in the capital stock of the said Boston & Pioche Mining Company for shares in said new company on the terms hereinafter set forth:

"Now, THEREFORE, in consideration of the premises and of the covenants and acts of the respective parties hereinafter expressed, the parties aforesaid have covenanted and agreed, and do by these presents covenant and agree to and with each other as follows:

"FIRST: The party of the first part has bought from the party of the second part six thousand five hundred and ninety-six (6,596) shares of the capital stock of said BOSTON & PIOCHE MINING COMPANY at the agreed price of eighty cents (80c) per share, and has paid therefor to the party of the second part the sum of five thousand two hundred seventy-six and 80-100 dollars ($5,276.80) in full therefore, the receipt whereof is hereby acknowledged by said party of the second part.

"SECOND: The party of the first part shall cause to be organized a corporation, under the laws of Utah, Nevada or Arizona, as he shall see fit, under the name of 'Scott Mines Company,' having a capital stock of five million dollars ($5,000,000.) divided into five million (5,000,000) shares of the par value of one dollar each, which shall be full paid and non-assessable, and the party of the first part covenants and agrees that the whole of said five million shares, except not over one hundred and fifty thousand (150,000) thereof for promoter's shares, shall be held in the treasury of such new company and be disposed of only for its corporate purpose.

"THIRD: The party of the second part shall deposit forthwith with the party of the third part three hundred and ninety-two thousand nine hundred and ninety-six

(392,996) shares of the capital stock of said Boston & Pioche Mining Company, being the entire remainder of the shares of said stock held by said party of the second part, in escrow, to be delivered to the party of the first part as hereinafter provided.

"FOURTH: The party of the first part shall deposit with said party of the third part, so soon as said Scott Mines Company shall be incorporated and its shares issued, and at all events within sixty days hereafter, certificates for full paid and non-assessable stock of said Scott Mining Company in the name of the party of the second part and for the following amounts respectively; one certificate for seven (7) shares; one certificate for one hundred eighty-eight thousand six hundred and ninety- four (188,694) shares; one certificate for three thousand eight hundred and fourteen (3,814) shares; one certificate for eight thousand two hundred and sixty-nine (8,269) shares; one certificate for four thousand one hundred and thirty-five (4,135) shares; one certificate for thirteen thousand six hundred and seventy (13,670) shares; one certificate for thirty-three thousand and sixty (33,060) shares; one certificate for twenty-four thousand seven hundred and ninety-one (24,791) shares; one certificate for one hundred and fifty-three (153) shares; one certificate for eleven thousand four hundred and forty-two (11,442) shares; one certificate for one thousand nine hundred and seven (1,907) shares; one certificate for seventy-six thousand two hundred and eighty (76,280) shares; one certificate for twenty-six thousand seven hundred and sixty-seven (26,767); one certificate for seven (7) shares. Said certificates shall be endorsed in blank by the party of the second part. Upon receiving such deposit said party of the third part shall deliver to said party of the first part all certificates of shares of stock of said Boston & Pioche Mining Company deposited with it as aforesaid. Said certificates of stock in said Scott Mines Company shall he held and retained by said party of the third part for the term of one year next after date of the deposit thereof, unless by resolution of the

board of directors of said Scott Mines Company consent shall be given for their delivery, to the persons entitled thereto, before the expiration of that time. Said party of the third part shall further issue to the party of the second part or to such persons and in such amounts respectively as the party of the second part shall direct, certificates of deposit evidencing its or their right to said shares which certificates shall not be and shall express that they are not transferable or negotiable.

"FIFTH: At the expiration of one year after the time of said deposit of said shares of said Scott Mines Company, or sooner, upon the consent of said Scott Mines Company expressed as aforesaid, said party of the third part shall, upon the surrender to it of said certificates of deposit, respectively issue and deliver said original certificates of stock to the holders of certificates of deposit for the same. All dividends declared in the meantime shall be payable to the holders of such certificates of deposit.

"SIXTH: The party of the first part further agrees that every other holder of stock of said Boston & Pioche Mining Company, who shall desire to do so, may, within thirty days next after deposit with said party of the third part of said shares of said Scott Mines Company, deposit with said party of the third part his certificate for shares of said Boston & Pioche Mining Company, duly endorsed in blank, upon the same terms and conditions as are hereinbefore expressed with respect to the shares of the party of the second part, and that the party of the first part will, within thirty days next after said deposit, cause to be deposited with said party of the third part a certificate for an equal number of shares of said Scott Mines Company in the name of said depositor. Upon receiving such deposit the party of the third part shall deliver to the party of the first part the certificate of stock of said Boston and Pioche Mining Company and shall issue to such depositor a certificate of deposit therefor in the same form as the certificates issued to the party of the second part hereunder.

"Seventh: The party of the first part shall also deposit with the party of the third part a certificate for the 150,000 promoter's shares of said Scott Mines Company upon the same terms and for the same period as the shares mentioned in article fourth hereof, and the party of the third part shall issue to him a like certificate of deposit thereof.

"Eighth: The party of the first part further guarantees and agrees to and with the party of the second part, if said Scott Mines Company shall exchange any of its shares for any shares of the capital stock of the Rawhide Northern Consolidated Mines Company, a corporation organized and existing under the laws of the State of Nevada, such exchange shall be made at the rate of not less than three shares of said Rawhide Northern Consolidated Mines Company for each share of said Scott Mines Company, and that all the stock of said Scott Mines Company issued upon such exchange shall be deposited and held in the same manner in which the shares, which are hereinbefore provided to be issued in exchange for the stock of said Boston & Pioche Mining Company, are to be held and for the same period.

"Ninth: The party of the third part accepts the duties and obligations conferred upon it by this agreement, but it is expressly agreed that it shall not be liable except for its own willful negligence or default in acting hereunder.

"In Witness Whereof, the party of the first part does hereunto set his hand and seal, and the parties of the second and third parts have caused these presents to be signed by their respective officers thereunto duly authorized, and their corporate seals to be hereto affixed, the day and year first above written.

(Signed)          Alexander W. Scott,   (Seal)
          Boston & Pioche Mining & Developing Co.,
                    By *Charles S. Miller, Pres.*
          Rhode Island Hospital Trust Company,
                    By *H. J. Wells, Prest.*
                    (Seal of R. I. H. T. Co.)

Seal of B. & P. M. & D. Co.
   Witness to all three:
   H. A. Hunt."

To this plea the plaintiff demurred, and, after argument thereon, the Superior Court overruled the demurrer, sustained the plea and dismissed the suit for want of jurisdiction. The plaintiff excepted to said decision and has duly prosecuted his exceptions to this court, and as a basis of his exceptions alleges the following reasons: (1) Because certificates of stock of a foreign corporation, which are in the hands and possession of a resident of this state, are subject to garnishment; (2) Because certificates of stock are personal property, and are subject to garnishment; (3) Because said decision is contrary to law.

The parties have argued this case as if the only question involved was whether shares or certificates of stock of a foreign corporation, owned by a non-resident, are subject to attachment in this jurisdiction by process of garnishment, served upon the Trust Company having the actual manual custody of the certificates, or whether the situs of the stock for the purpose of attachment is the situs of the corporation whose shares are thus sought to be attached. We find, however, that there is an underlying question, arising from the nature of the agreement "Defendant's Exhibit A," under which the Rhode Island Hospital Trust Company holds the certificates of stock which are sought here to be held under the process of garnishment. By reference to that agreement it is plain that the primary purpose thereof is to effect an exchange of certain shares of stock in a corporation to be organized, to wit, the Scott Mines Company, for certain shares of stock of a corporation previously organized and existing, to wit, shares in the Boston & Pioche Mining Co. of Arizona, which are said to be held by the Boston & Pioche Mining and Development Co. of Maine; and it is agreed (Art. "Third") that the last mentioned company, party of the second part, shall deposit 392,996 shares of the capital stock of the Boston & Pioche Mining Co. with the Rhode Island Hospital Trust Co. in escrow, to be delivered to the party of the first part, (Scott, the defendant.)

By Article "Fourth," Scott (the defendant) agrees to deposit with the Trust Company fourteen certificates of stock in the Scott Mines Co. (when incorporated and within sixty days after date of agreement) which aggregate the same number of shares, viz.: (392,996) as are to be deposited by the Boston & Pioche Mining and Development Co.; and the Scott Mines Co. certificates are expressly to be issued "in the name of the party of the second part" (Boston & Pioche Mining and Development Co.) and are to "be endorsed in blank by the party of the second part." And upon deposit with the Trust Company of the Scott Mines Co. certificates, the Trust Company is to deliver to Scott all certificates of stock of Boston & Pioche Mining Co. deposited with it; and to hold the certificates of stock in the Scott Mines Co. for one year after deposit, unless consent to their delivery is given before that time by the Board of Directors of the Scott Mines Co. The agreement does not disclose the names of the persons to whom these certificates of stock are to be ultimately delivered but it is to be noted that up to this point there is no provision for the deposit with the Trust Company of any shares of stock in the Scott Mines Co. in the name of Scott the defendant or to be delivered to him. He is only entitled to receive the shares in the Boston & Pioche Mining Co.

By the "Fifth" Article of the agreement, it is provided that at the expiration of one year after the deposit of the certificates, or sooner upon consent of the Scott Mines Co., the Trust Company is to deliver the certificates held by it, for shares in the Scott Mines Co. to persons (undisclosed) surrendering certificates of deposit for such shares.

There are further similar provisions for exchange of other shares (by Article "Sixth") of the Boston and Pioche Mining Co. and Scott Mines Co. if the shareholders see fit to avail themselves of them; and certain other agreements regarding possible exchanges of stock in the Rawhide Northern Consolidated Mines Company (by Article "Eighth"), discussion of which in detail is not now material.

There is also provision (by Paragraph "Seventh") requiring the party of the first part (defendant Scott) to deposit with the Trust Company a certificate for 150,000 promoter's shares of the Scott Mines Co. upon the same terms and for the same period as provided in Article "Fourth," "and the party of the third part" (the Trust Company) "shall issue to him a like certificate of deposit thereof." These promoter's shares are mentioned in Article "Second" of the agreement, but it nowhere appears that they belong to Scott, the defendant, or are to be issued in his name, nor does it appear that the certificate of deposit to be issued to him by the Trust Company, under Article "Fourth," is to be issued for his benefit, or whether or not he has any interest therein or whether or not their issue is solely for the benefit of Scott, or for his benefit with others undisclosed, or to him as trustee for himself and others undisclosed or solely for the benefit of other persons undisclosed.

The plaintiff, by process of garnishment, served upon the Rhode Island Hospital Trust Company, attempts to attach the certificates for shares of stock in the Scott Mines Company which are held on deposit by the Trust Company standing in the name of the defendant Alexander W. Scott.

The first affidavit filed by said Trust Company is dated Nov. 23, 1909, and is as follows:

SUPERIOR COURT,

"PROVIDENCE, SC.

Emile Maertens
          *vs.*          } No.
Alexander W. Scott. }

TRUSTEE'S AFFIDAVIT.

"I, WILLIAM A. GAMWELL, on oath depose and say that I reside in the City of Providence and am the secretary of the RHODE ISLAND HOSPITAL TRUST COMPANY and the officer of said Trust Company upon whom was served

a copy of the writ in the above entitled cause for the purpose of attaching the personal property of the defendant in the hands and possession of said Trust Company.

"At the time of the service of said copy, the said Rhode Island Hospital Trust Company held in its possession a large number of certificates of stock of the Scott Mines Company, a corporation organized under the laws of the State of Nevada, deposited with it under an agreement in writing between the defendant and others dated September 16th, 1908, to be held by it until one year after the deposit with it of said certificates, which year expired on November 17, 1909. And from time to time as said certificates of stock were deposited with it, said Trust Company had issued receipts therefor in such names as it was instructed by the parties to said deposit agreement, all of which were in the following form, the blanks being duly filled in each instance, namely:—

" 'PROVIDENCE, R. I.,        1909.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

" ' Rhode Island Hospital Trust Company
hereby acknowledge to have received certificate No. . . . . . . . .
for . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
shares of the SCOTT MINES COMPANY of Nevada, standing in your name, deposited with said Trust Company in accordance with an agreement of September 16th, 1908, between Alexander W. Scott and others.

" ' *This receipt not transferable or negotiable*

" 'Rhode Island Hospital Trust Company,

. . . . . . . . . . . . . . . . . . . . . . .President.'

"At the time of the service of the copy of said writ as aforesaid, said Trust Company held certificates of stock in said Scott Mines Company issued in the name of the said

defendant for 369,098 shares for which it had issued numerous receipts in the form aforesaid in the name of the said defendant and also held a further certificate of said Scott Mines Company for 76,280 shares issued in the name of the Boston & Pioche Mining & Development Company and assigned in blank by said Boston & Pioche Mining & Development Company, and had issued its receipt therefor in the form aforesaid to the said defendant in accordance with instructions received by it to that effect.   And this deponent is informed and believes that since the issue of said receipts as aforesaid, the said defendant has transferred some of said receipts to other persons, but is ignorant of the details of such transfers and of the rights, if any, legal or equitable, which such transfers may have given to the holders thereof against the said Rhode Island Hospital Trust Company and to said certificates of stock of the said Scott Mines Company held by it as aforesaid.

"And this deponent further says that since the service of the copy of said writ upon him, the said plaintiff has released from the attachment made thereby a total of 180,000 shares of said stock of said Scott Mines Company, leaving a balance of 265,378 of said shares, including the certificate aforesaid issued in the name of said Boston & Pioche Mining & Developing Company, in the hands and possession of said Trust Company, for which it has issued its receipts in the name of said defendant.

"And otherwise than as above stated the said Rhode Island Hospital Trust Company at the time of the service of the copy of said writ had none of the personal estate of the said defendant in its hands or possession, either directly or indirectly.

WM. A. GAMWELL

"Subscribed and sworn to by William A. Gamwell at Providence this 23d day of November, A. D. 1909.
Before me,

(Seal)                    WILLIAM R. TILLINGHAST
                                       *Notary Public.*

"And said Trust Company appears and answers said action as above and asks the court to determine whether it is properly chargeable as trustee of the said defendant, and if so, to what extent.

By its attorneys,

JAMES TILLINGHAST
TILLINGHAST & COLLINS."

The second affidavit, dated December 1, 1909, (Trustee's Amended Affidavit), is as follows:

"PROVIDENCE, SC.                    SUPERIOR COURT.

Emile Maertens
    vs.
Alexander W. Scott.

"TRUSTEE'S AMENDED AFFIDAVIT.

"I, William A. Gamwell, on oath depose and say that I reside in the city of Providence and am the secretary of the RHODE ISLAND HOSPITAL TRUST COMPANY and the officer of said Trust Company upon whom was served a copy of the writ in the above entitled cause for the purpose of attaching the personal property of the defendant in the hands and possession of said Trust Company.

"At the time of the service of said copy, the said Rhode Island Hospital Trust Company held in its possession a large number of certificates of stock of the Scott Mines Company, a corporation organized under the laws of the State of Nevada, deposited with it under an agreement in writing between the defendant and others dated September 16th, 1908, to be held by it until one year after the deposit with it of said certificates, which year expired on November 17, 1909. And from time to time as said certificates of stock were deposited with it, said Trust Company had issued receipts therefor in such names as it was instructed by the

parties to said deposit agreement, all of which were in the following form, the blanks being duly filled in each instance, namely:—

" 'PROVIDENCE, R. I.,                    1909.

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

" 'Rhode Island Hospital Trust Company hereby acknowledges to have received certificate No . . . . . . . .

for . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

shares of the Scott Mines Company of Nevada, standing in your name, deposited with said Trust Company in accordance with an agreement of September 16th, 1908, between Alexander W. Scott and others.

*" 'This receipt not transferable or negotiable*

" 'Rhode Island Hospital Trust Company,

. . . . . . . . . . . . . . . . . . . .President.'

"At the time of the service of the copy of said writ as aforesaid, said Trust Company held certificates of stock in said Scott Mines Company issued in the name of the said defendant for 369,098 shares for which it had issued numerous receipts in the form aforesaid in the name of the said defendant and also held a further certificate of said Scott Mines Company for 76,280 shares issued in the name of the Boston & Pioche Mining and Developing Company and assigned in blank by said Boston & Pioche Mining & Development Company, and had issued its receipt therefor in the form aforesaid to the said defendant in accordance with instructions received by it to that effect. And this deponent further says that said Trust Company was informed by the defendant prior to the date of the service of the copy of said

writ that he had assigned 256,280 shares of the stock of said Scott Mines Company represented by certain of said receipts, including that representing those shares issued to said Boston & Pioche Mining & Developing Company as aforesaid, to his wife, Jessie L. Scott, and a writing purporting to be an assignment and transfer of said shares signed by the defendant was received by the said Trust Company from the said Jessie L. Scott at about the same time that it was notified thereof; and that said defendant also transferred others of said receipts to other persons, making a total of 436,280 shares so assigned to the knowledge of this deponent and leaving unassigned so far as this deponent or said Trust Company knows 9,098 of said shares. But this deponent and said Trust Company are ignorant of the details of such transfers and of the rights, if any, legal or equitable, which such transfers may have given to the holders thereof against the said Rhode Island Hospital Trust Company and to said certificates of stock of the said Scott Mines Company held by it as aforesaid.

"And this deponent further says that since the service of the copy of said writ upon him as aforesaid, the said plaintiff has released from the attachment made thereby a total of 180,000 shares of said stock of the said Scott Mines Company, represented by certificates and receipts other than those purporting to be assigned to the said Jessie L. Scott, as aforesaid.

"And otherwise than as above stated the said Rhode Island Hospital Trust Company at the time of the service of the copy of said writ had none of the personal estate of the said defendant in its hands or possession, either directly or indirectly.

WM. A. GAMWELL

"Subscribed and sworn to by William A. Gamwell at Providence this 1st day of December, A. D. 1909.

"Before me,

"WILLIAM R. TILLINGHAST
*Notary Public.*

"And said Trust Company appears and answers said action as above and asks the court to determine whether it is properly chargeable as trustee of the said defendant, and if so, to what extent.

"By its attorneys,

"JAMES TILLINGHAST<br>"TILLINGHAST & COLLINS."

The "Trustee's Supplemental Affidavit," dated March 14, 1910, is as follows:

"PROVIDENCE, SC.                    SUPERIOR COURT.

Emile Maertens

    *vs.*

Alexander W. Scott.

"TRUSTEE'S SUPPLEMENTAL AFFIDAVIT.

"I, William A. Gamwell, on oath depose and say that I am the Secretary of the Rhode Island Hospital Trust Company and the same person who made the amended trustee's affidavit in the above entitled cause on December 1, 1909; and I further say that since the making of said amended affidavit the said Rhode Island Hospital Trust Company has been notified, by the Scott Mines Company mentioned in said amended affidavit, that its Board of Directors had passed a vote instructing the Secretary of said Company to cancel certificate No. 20 for 150,000 shares of its capital stock as well as other certificates not held by said Rhode Island Hospital Trust Company, and to refuse any transfer of the same if they should be presented to him, on the ground that the said A. W. Scott had issued said certificates without any authority from the Board of Directors and without any consideration therefor. And this deponent further says that the 150,000 shares of stock represented by said certificate No. 20 are a portion of the 256,280 shares assigned by

the said A. W. Scott to his said wife, Jessie L. Scott, as stated in his said amended affidavit.

"W. A. GAMWELL.

"Subscribed and sworn to by William A. Gamwell at Providence this 14th day of March, A. D. 1910.

"Before me

"WILLIAM R. TILLINGHAST

'"*Notary Public.*

"And said Trust Company asks the Court to determine whether it is properly chargeable as trustee of the said defendant, and if so, to what extent,

"By its attorneys,

"JAMES TILLINGHAST

"TILLINGHAST & COLLINS."

By these affidavits it appears:

1.  That at the time of service of the writ (October 4, 1909), the Trust Company was not under obligation to deliver any certificate of stock in the Scott Mines Co. to any person whomsoever, since the period of one year from the date of deposit had not expired, and would not expire until November 17, 1909, more than six weeks after date of service;

2.  That while it held certificates for a very large number of shares in the Scott Mines Co. standing in the name of the defendant, it does not appear by what authority such certificates were issued in the name of the defendant, or received by the Trust Company standing in his name, when the agreement (Exhibit A.) expressly provides that, as to 392,996 shares of said stock, they are to be issued in the name of the Boston & Pioche Mining & Development Company and by it endorsed in blank (See Article "Fourth," Exhibit A.);

3.  That the trustee is informed and believes that defendant has transferred some of the receipts to other persons (unknown to the trustee) and whose rights legal or equitable are unknown;

4. That the Trustee prior to service of the writ received notice from Scott the defendant that he had assigned 256,280 shares of the stock of the Scott Mines Co. represented by certain of said receipts, including that representing 76,280 shares issued to the Boston & Pioche Mining and Development Company, to his wife Jessie L. Scott, who had also about the same time sent to the trustee a writing purporting to be an assignment and transfer of said shares signed by defendant;

5. That since service of the writ the plaintiff has released 180,000 shares from the attachment;

6. That since the date of making the amended affidavit, December 1, 1909, the trustee has been notified by the Scott Mines Company, of the invalidity of the issue of certificate No. 20, for 150,000 shares, that the same was issued by Scott, the defendant, without authority and without consideration, and that the Board of Directors had directed the Secretary of the Scott Mines Co. to cancel the same; and that this 150,000 shares represented by certificate No. 20 was a part of the stock assigned by defendant Scott to his wife Jessie L. Scott.

From the foregoing review of the circumstances surrounding this case, it is perfectly evident that, at the time when the writ was served upon the Rhode Island Hospital Trust Company in the attempt to garnish the shares or certificates for shares in the Scott Mines Co. as the property of the defendant, there was no action at law which the defendant could have brought against the Trust Company in relation to said shares or said certificates or any matter or thing in relation thereto; nor was there any claim or demand of any kind upon which the defendant had any right of action whatsoever against the Trust Company. By virtue of the agreement of deposit (Exhibit A.) followed by the deposits of certificates standing in the name of the defendant, and others, and again followed by all the numerous transfers and assignments, notices and claims of one sort and another, it is clear that no action at law of any kind has ever arisen;

on the contrary, it is obvious that only equitable relations have been created, whereby the Trust Company, as the custodian of the certificates, has become a trustee for the purpose of holding the same until it shall appear to whom the same equitably belong. It is certain that in the first instance, under the agreement, only equitable relations were constituted, and there was nothing in the nature of an action at law that could have arisen thereunder; and it is also certain that now equitable rights have arisen between numerous parties, largely non-resident of the State of Rhode Island, including the Scott Mines Company of Nevada, the Boston & Pioche Mining and Development Co. of Maine, Jessie L. Scott, Alexander W. Scott the defendant, and numerous other undisclosed non-resident parties, which can only be determined by means of a bill in equity wherein all of the persons interested may be entitled to appear as parties. Only by such means can it be made finally to appear whether the defendant Scott is lawfully entitled to demand and receive any, and if any, how many, of the certificates of stock of the Scott Mines Co. and for what number of shares, if any. Such a controversy cannot be tried out in a court of law, through the process of garnishment, even if all of the parties thereto could be brought before the court.

The rule is well stated in Drake on Attachment, as follows:

"§457. It is necessary, in the first place, to bear in mind, that, wherever the distinction exists between common law and chancery jurisdiction, courts of law cannot undertake, by garnishment, to settle equities between the parties, in order to subject an equitable demand which the defendant may have against the garnishee, to the payment of the defendant's debt. Where this distinction does not exist, and both branches of jurisdiction are, as it were, fused into one, or where, as in some States, courts of chancery are vested with jurisdiction in attachment cases, the rule may be different. In courts of law, however, garnishment must be considered as a legal and not an equitable proceeding, and consequently defendant's rights to the fund or property sought to be con-

demned must be legal, as contradistinguished from equitable. If this rule be departed from, there will be no stopping point, and we must go the full length, and claim that the equitable rights of the defendant may be attached by garnishment in a suit at law, and thus a court of law will become invested with cognizance of equitable rights, and therefore bound to ascertain and condemn them, however difficult the task may be, or however incompetent the powers of the court for this purpose. Thus, where a garnishee was sought to be charged, on the ground that he was indebted to the defendant in respect of a partnership which had existed between them, but the accounts of which had not been settled, it was held, that the proceeding could not be sustained; that the partnership accounts could not be settled in that way, but only in equity." And see *Hassie* v. *G. I. W. U. Congregation,* 35 Cal. 378.

In *Sheedy* v. *Second National Bank, Garn.* 62 Mo. p. 17, the court says, at pp. 24–25 as follows: "It must be borne in mind that garnishment is essentially a legal proceeding, and not adapted for the ascertainment and settlement of equitable rights between the garnishee and the defendant; and that a court of law has no power to act on the debt, until by an adjustment of the partnership affairs, it shall appear whether the defendant has any and what interest in the general surplus, or the particular debt." . . . "The only remaining question is the action of the court in overruling the motion requiring Streeter and Rizer to appear and litigate their respective rights in the debt. In reference to this question it might be sufficient to say, that no exception was taken to the court's ruling. But aside from this, the action of the court was manifestly proper. There was no authority for the proceeding; the parties were non-residents, and not within the jurisdiction of the court, and that tribunal could exercise no control over them. A garnishment proceeding, as previously remarked, is strictly legal, and no power exists in the court to invoke equitable interference to compel a settlement and adjustment of accounts between other parties.

"The 7th section of our garnishment act (Wagn. Stat. 665) provides that, 'whenever any property, effects, money or debts, belonging or owing to the defendant, shall be found in the hands of the garnishee, he may, at any time before final judgment, discharge himself by paying or delivering the same or so much thereof as the court shall order to the sheriff, from all further liability on account of the property, money or debts so paid or delivered." The statute evidently contemplated, that, in order to render a person liable as garnishee, the debt which he owed the defendant should be of such a character that upon being served with process he might pay the amount, without being compelled to await the determination of a chancery proceeding requiring an adjustment of accounts between parties and partnerships. So thought the court in *Lackland* vs. *Garesche* (56 Mo. 267), where it held that the statute touching garnishment is essentially legal and not equitable in its nature and procedure; and the rights, credits and effects in the hands of the garnishee which are subject to attachment, are such as are not incumbered with trusts, and such as may be delivered over, or paid to the officer under the direction of the court, free from incumbrances. The judge, in delivering the opinion, said that it was 'not contemplated by the legislature to authorize a court of law, in a mere side issue growing out of an attachment suit, to exercise the intricate and complicated duties of a chancellor.' "

In *Harris* v. *Miller*, 71 Ala. 26, the court says, at p. 32: "On first examination of this cause, we were of the opinion there was no error in the record of injury to the appellant. Further examination has led us to a different conclusion. A garnishment is not an equitable proceeding. It is essentially a legal proceeding, assimilated to an attachment of personal property; and, in its nature and operation, is the institution of a suit by a creditor against the debtor of his debtor. Only such demands, as the debtor by an action at law in his own name can enforce, the creditor may reach and condemn by this remedy; and whatever defenses would pre-

vail if the debtor were himself suing, will avail against the garnishing creditor.   Equitable demands can not be reached, and if a legal demand exists, complicated and involved with matters strictly and purely of equitable cognizance, which must be adjusted if full and complete justice is done, the parties will be remitted to a court of equity.—1 Brick. Dig. 175, §§ 313–14; *Toomer* v. *Randolph,* 60 Ala. 356."

In *Harrell* v. *Whitman,* 19 Ala. 135, the court says, at pp. 138–139: "2nd.   We consider it settled by the previous decisions of this court, that the process of garnishment must be considered as a legal and not as an equitable proceeding, consequently, the defendant's rights to the fund or property sought to be condemned, must be legal as contradistinguished from equitable. — *Representatives of Thomas* v. *Hopper,* 5 Ala. 442.   In the case of *Travis* v. *Tartt,* 8 Ala. 574, it was said that the proceeding by garnishment is the institution of a suit, in which the creditor is permitted to proceed against the debtor of his debtor, and therefore it would seem to be governed by the general rules, applicable to other suits.   Again, in the case of *Walke* v. *McGehee,* 11 Ala. 273, it was said by the judge delivering the opinion (although the point was not expressly decided), that 'our statutes when they speak of indebtedness to the defendant in attachment or judgment, refer to such indebtedness as would enable the debtor himself to maintain debt or *indebitatus assumpsit.*'   Indeed, if we ever depart from the plain rule, that the attachment and garnishment can operate only on the legal rights of the defendant, there will be no stopping point, and we must go the full length, that the equitable rights of the defendant may be attached by garnishment in a suit at law, and thus a court of law will become invested with cognizance of equitable rights, and therefore bound to ascertain and condemn them, however difficult the task may be, or however incompetent the powers of the court for this purpose.   It is better to hold to the plain and settled rule, that the creditor can condemn by process of garnishment only such rights of his debtor, as the debtor could recover by

action at law in his own name, that is, his legal rights as distinguished from equitable.   See also, 14 Am. & Eng. Enc. of Law, 761–2; *Nims* v. *Ford*, 159 Mass. 575; *Chase* v. *Thompson*, 153 Mass. 14; *Bailey* v. *N. E. Ins. Co.* 114 Mass. 177; *Folsom* v. *Haskell*, 11 Cush. 470; *Maine F. & M. Ins. Co.* v. *Weeks*, 7 Mass. 438; *Field* v. *Crawford*, 6 Gray 116; *Mass. National Bank* v. *Bullock*, 120 Mass. 86.

Our own court has recognized the principle that garnishment proceedings will not lie, in cases of equitable claims as distinguished from legal claims:—See *Perry* v. *Thornton*, 7 R. I. 15, *Smith* v. *Millett*, 11 R. I. 528.   Doubtless many more cases might be cited to the same general effect; but we have found no case which is more closely analogous to the case at bar, than those relating to attempts made to garnish claims due to a partnership in suits against the individual partners, or to garnish the interest of the individual partners, in the partnership fund.   We deem the general principle upon which all these cases rest, to be clearly applicable here. It would be manifestly unfair to the Rhode Island Hospital Trust Company, as well as to other parties interested, to require them to attempt to litigate, in this proceeding, all of the questions of trust obligations to the defendant, confused and complicated as they are by reason of all that has been done with reference to these certificates of stock, and to attempt to work out all the conflicting equities, particularly in view of the fact that we cannot, nor can the Superior Court, bring before the court all of the parties necessary to the complete determination of the complex equities, many of the parties interested being unknown, and most, if not all of them, being non-resident.

We therefore hold that for the reasons herein set forth, no valid attachment has been made under the plaintiff's writ, and there has consequently been no such service thereof as to give jurisdiction to the Superior Court over the controversy set forth in the declaration.

The plaintiff's exceptions are therefore overruled, and the case is remitted to the Superior Court for further proceedings.

SWEETLAND, J. I agree with the conclusion of Mr. Justice Parkhurst that the demurrer to the plea in abatement should be overruled. Without considering the correctness of the justice's conclusions upon what he terms the "underlying question" in the cause, I am strongly of the opinion that the court is not justified in determining the matter before us upon that ground. This question which the justice, upon his own investigation has found in the case was not presented to or considered by the justice of the Superior Court whose ruling we are asked to review, it was not referred to in the briefs or the argument of counsel before us, and so far as appears from the record or the conduct of the parties this question will be presented for the first time upon the filing of the opinion of the court. Furthermore, the question does not appear to my mind to more deeply underlie the particular matter before us than the question which the parties intended to raise by the plea to the jurisdiction and the demurrer thereto, and which they have urged before the Superior Court and here. Indeed, if the jurisdiction of the Superior Court is not affected by the objection which the defendant desires to interpose, and the case should be allowed to proceed, the court has no right to assume at this time, that by interrogatories of the plaintiff to the garnishee, under the statute, the facts upon which this so-called underlying question is based will not disappear or present an entirely different aspect. Our brother Parkhurst has apparently proceeded upon the theory that this being a question of jurisdiction it may be raised at any time and that it may be interposed by the court itself upon discovering a state of facts which appears to warrant it; but this view overlooks the distinction between a plea alleging a lack of jurisdiction over the subject matter and one that sets up a want of jurisdiction over the person of the defendant; and also loses sight of the fact that the court may have jurisdiction of the subject matter of the suit even though in some proper form of procedure it may hereafter appear that it does not have jurisdiction to charge the gar-

nishee. Only some such misapprehension as this could lead the court, on its own motion, to take up prematurely and to determine this matter, without listening to the argument of counsel upon it, without waiting for a motion to charge or discharge the garnishee, without permitting the plaintiff, under the statute, to interrogate the garnishee and to introduce proper testimony which perhaps might throw further and a different light upon the situation. Under sec. 12, Chap. 301, Gen. Laws, 1909, "the person signing the garnishee's answer may be summoned by either party at any time before final judgment and subjected to examination and cross-examination upon all matters relating to or connected with the facts set forth in such answer, and evidence may be introduced to contradict the testimony of such person." What right has this court, at the beginning of a cause, in deciding a demurrer to a plea in abatement, to take as true the facts set out in the garnishee's affidavit, when these facts are not alleged in the plea and no opportunity has yet been given for a proper tribunal to determine their truth either in a hearing upon the merits of the plea or in an examination under the statute.

The defendant is a non-resident. The writ, issued from the Superior Court, was served by attaching the defendant's personal estate in the hands of the Rhode Island Hospital Trust Company, and by sending a copy of the writ, with proper endorsements thereon, by mail to the defendant at his address outside this state. This was in accordance with the provisions of the statute. The action was begun in the right county, and was for a cause within the jurisdiction of the Superior Court to hear and determine; also the court acquired jurisdiction over the person of the defendant if he submitted to its jurisdiction or if property of his was attached. The defendant appeared specially and filed a plea to the jurisdiction of the court setting out in substance that the court did not acquire jurisdiction over his person. This plea is analogous to a plea in abatement.

"A general appearance confers jurisdiction of the person,

and if the defendant would object to the jurisdiction of the court over his person, as for want of due service of process or irregularity therein, he must do so *in limine* by plea in abatement where it is necessary to plead any matter of fact on which his objection is founded, and before answering to the merits." . . . " The question is regarded as one of personal privilege in the party, and therefore if, by reason of a mere irregularity in the commencement of the proceedings, defective process, or even an entire absence of process, the objection that the parties are not properly brought before the court might lie, such an objection must be raised *in limine* or it will be waived." 12 Ency. Pl. & Pr. pp. 182, 191.

Chief Justice Shaw said in *Brown* v. *Webber*, 6 Cushing, 563, 565: "We are aware of the maxim, that consent cannot give the court jurisdiction. This is true, where the maxim is properly applicable, as where a suit is brought in a court having no jurisdiction of the subject-matter, as in case of a real action, local in its nature, out of the county where the estate lies, or a bill in equity in the court of common pleas, or the proof of a will in a court of common law. But when a court is one of general jurisdiction, and has jurisdiction of the subject, and a party is summoned, though irregularly, if he does not object to the irregularity in the proper stage, but pleads, answers, or enters a general appearance, he waives the objection, and, in a certain sense, therefore, does give jurisdiction by consent; that is, jurisdiction of the person. In order to acquire jurisdiction of the person, he must be served with process. . . . If the defendant would object to the irregularity, or want of due service, he may do so by plea in abatement when it is necessary to plead any matter of fact, on which his objection is founded." . . . "These distinctions, perhaps, between jurisdiction of the case, and jurisdiction of the person of the parties, have not always been kept distinctly in view."

From this consideration it appears plainly that this sort of objection to the jurisdiction is not one that may be

raised at any time, nor is it one which the court may raise upon its own motion.

This plea has the incidents of a plea in abatement. "Pleas in abatement, as they do not deny the merits of the plaintiff's claim, but merely tend to delay the remedy, are not favored by the courts, and the greatest strictness is applied to them and they will not be aided in construction by any intendments. With them correctness of form is matter of substance and any defect of form is fatal. They must answer the whole case and contain a full, direct, and positive averment of all material fact. Such pleas must be certain to every intent and leave nothing to be drawn by inference. They must anticipate and include all such supposable matter as would, if alleged by the opposite party, defeat the plea." 1 Ency. Pl. & Pr. pp. 23, 24.

If, therefore, by his failure to plead in abatement, the defendant is held to have waived the right to question the jurisdiction of the court over him, and if a plea in abatement shall be strictly construed and shall be aided by no intendments in its favor, then having pleaded in abatement and set up special grounds in support of the plea he must be held to have waived all other grounds of objection to the jurisdiction of the court over him; and the court cannot of its own motion set aside the effect of that waiver on his part. In accordance with the strictness with which pleas in abatement are viewed, the only objection which the defendant can be held to have raised against the jurisdiction of the court is that the certificates of stock, standing in the name of the defendant, which the garnishee has in its hands, are certificates of stock of a foreign corporation, which are not attachable in this state. In said plea the defendant does refer to the agreement under which the garnishee holds the certificates, but plainly not for the purpose of raising the objection, which the court has found for him. As is pointed out by the court, under the said agreement the said certificates might be held by the garnishee for one year and at the time of the service of the writ the year had not expired. Nevertheless,

contrary to what appears to be the conclusion of our brother Parkhurst, in accordance with the principles laid down in Cross v. *Brown, Steese and Clarke*, 19 R. I. 220, if it should appear that the delivery of any of the certificates held by the garnishee was not subject to a contingency, the attachability of the shares of stock would not be affected by the provision for delay in delivery, even though the defendant himself would not be able to obtain delivery at that time. The court is not now in a position to say that the delivery to the defendant of any one of said certificates held by the garnishee was subject to a contingency.

The only objection which the defendant has raised is that the stock, being that of a foreign corporation, cannot be attached here. That plea cannot be aided by any intendment in its favor nor can it be assisted or enlarged by the ingenuity, the acumen or the learning of the court. That this is the correct interpretation of the defendant's plea clearly appears from his own arguments offered in support of it in the Superior Court and before us. That is the stand he has taken and on that he appears perfectly willing to rely.

That the demurrer of the plaintiff was directed solely to the insufficiency of that objection contained in the plea is shown by the briefs and the argument of his counsel. It is only the ruling of the Superior Court on this demurrer which is here for review. In considering this question our brother Parkhurst has treated it in many ways as a hearing of the plea upon its merits and ignored the situation that it is here simply for review of the decision on the demurrer. In delivering his opinion he has gone for his facts very largely to the three affidavits of the garnishee which are set out in full. He has taken as true the statement of facts contained in the affidavits, whether stated positively or on information and belief, as to the true import of many of which the garnishee admits that it is ignorant. These affidavits or the facts therein contained are not before us and we have no right to consider them. The affidavits and the

facts contained in them were not made parts of the plea; and it is an elementary rule in the consideration of a demurrer that it shall not speak of facts, that it admits the truth of whatever is contained in the pleading demurred to, and nothing more.  It is true that a demurrer searches all the pleadings and seeks out the first fatal defect, but it has never been considered as its office to discover unintended excellencies in a plea in abatement, nor does it lead a court back through the record that service of process may be declared invalid because of a defect which has already been waived by the party.

I would strongly dissent from the practice of raising questions and determining causes upon them, without hearing the parties, even when the questions are pertinent to the issue.  Such practice can only tend to the reasonable annoyance and resentment of the bar.  Many times it must lead the court, unaided by the arguments of counsel, into positions full of misconceptions, from which it can only retire with embarrassment.

In the circumstances of the case before us such action on the part of the court would be particularly exasperating to the plaintiff and highly unjust to him.  The court, in such case, would have entirely disregarded the question elaborately presented to it by counsel, which if determined against the plaintiff would be conclusive of his rights.  From such action of the court he would be entitled to infer that the opinion of the court was in his favor upon the matter presented to it.  For if unfavorable to him the court should have dismissed his suit upon that ground; but if instead it takes up another question and upon that decides against him and dismisses him from the court, can he not reasonably complain that such action was taken without giving him an opportunity to be heard?

The question presented by the demurrer, argued before the justice of the Superior Court and before us is a vital one and should be determined.  The great weight of authority supports the conclusion of the learned justice of the Superior

Court, that shares or certificates of stock of a foreign corporation are not subject to attachment outside the jurisdiction where the corporation was created and exists. This court so held in *Ireland* v. *Globe Milling Company*, 19 R. I. 180: "We think it is well settled that shares of stock owned by a non-resident defendant in a foreign corporation, cannot be reached by process of attachment, although the officers of the corporation are within the state and the business of the corporation is being carried on here. The situs of the stock for the purpose of attachment and execution is the domicile of the corporation, and that place only."

Our statute, C. P. A. sec. 544, in force at the time of the issuance of the writ in this case, is somewhat more comprehensive than the provision in most jurisdictions, and allows attachment of shares in a foreign corporation by service upon the attorney of the corporation, appointed with authority to accept service of process against the corporation in this state. But this statute in no way authorizes the attachment by garnishment of shares or certificates of stock in the possession of any person other than the corporation issuing the shares, as was attempted in this case. Also the *Scott Mines Company*, which corporation of the State of Nevada issued the certificates in question, has never appointed an agent or attorney with authority to accept service of process against it in this state. The plaintiff therefore has such rights only as that plaintiff had whose attachment was considered in *Ireland* v. *Globe Milling Co.*, *supra*. The position of this court in that matter is in accord with the nearly general consensus of opinion of the courts of the various states, and the textwriters.

In *Winslow* v. *Fletcher*, 53 Conn. 391, the defendants, residing in the State of Indiana, and owning stock in the Indianapolis National Bank, located in the said State of Indiana, lodged a certificate of the stock with a blank power to sell and transfer it, with the Connecticut Mutual Life Insurance Company, a Connecticut corporation, as collateral security for a loan, its value being considerably in excess of the loan.

Held, that the equitable interest of the defendants in the stock could not be reached by the process of foreign attachment in Connecticut, and that the stock could not be reached by ordinary attachment in that state, its situs for the purpose of attachment being the situs of the corporation which had issued it.

In *Ashley* v. *Quintard*, 90 Fed. Rep. 84, the court held that stock owned by a citizen of New York in a railroad corporation of Michigan cannot be attached by process levied in Ohio. Such stock is not located in Ohio, and hence is not subject to attachment or garnishment there.

In *Armour* v. *St. Louis National Bank*, 113 Mo. 12, the court said: "In *Foster* v. *Potter*, *supra*, this court held that without an express statute, shares of stock, even of domestic corporations, could not be seized as personal property or evidence of debt, and, if this cannot be done, it is too plain for argument that the shares of stock in a foreign corporation cannot be levied upon by simply seizing a certificate which may happen to be in this state."

It was held in the case of *Smith* v. *Downey*, 8 Ind. Ap. 179, that a citizen of Indiana could not attach certificates of stock owned by a non-resident in a Colorado corporation, even though the certificates of stock were in the State of Indiana and within the jurisdiction of the court.

In *Plimpton* v. *Bigelow*, 93 N. Y. 592, the court, in passing upon the question as to the situs of stock for the purpose of attachment, says: "We do not doubt that shares for the purpose of attachment proceedings may be deemed to be in the possession of the corporation which issued them, but only at the place where the corporation by intendment of law always remains, to wit, in the state or county of its creation, . . . manifestly, a res cannot be within the jurisdiction as a mere consequence of a legislative declaration, when the actual location is undeniably elsewhere."

In the case of *Christmas* v. *Biddle*, 13 Pa. St. 223, approved in *Childs* v. *Digby*, 24 Pa. St. 23, the court held that stock cannot be attached by attaching the certificate any more than

land situated in another state can be attached by an attachment in Pennsylvania levied on the title deeds to such land. Here the attachment was levied in Pennsylvania on certificates of stock in Pennsylvania, but belonged to a citizen of Mississippi, and the corporation was created by the laws of Massachusetts.

In Cook, Stock & Stockholders, Sec. 485, the author says: "All attachment statutes provide for the attachment of a non-resident debtor's property in the state; and generally, under such statutes, the stock owned by a non-resident in a corporation created by the state wherein the suit is brought may be attached, and jurisdiction be thereby acquired, to the extent of the value of the stock attached. But under no circumstances can a defendant's shares of stock be reached by levy of attachment in any action commenced outside of the state wherein the corporation is incorporated. For the purpose of attachment, stock is located where the corporation is incorporated, and nowhere else. The shares owned by a non-resident defendant in the stock of a foreign corporation cannot be reached and levied upon by virtue of an attachment, although officers of the corporation are within the state and engaged in carrying on the corporate business."

In *Winslow* v. *Fletcher*, 53 Conn. 391, the court says: "While the certificates are in themselves valuable, and to some extent may properly be regarded as property, yet they are distinct from the holder's interest in the capital stock of the corporation, and are not goods and effects within the meaning of the statute relating to foreign attachment. They are no more subject to an attachment or a trustee process than a promissory note. The debt is subject to attachment, but the note itself, which is simply evidence of the debt, is not. So with stock; that may be attached, but the certificates cannot be."

I am of the opinion that the ruling of the justice of the Superior Court upon the demurrer was without error; that the plaintiff's exception should be overruled; and the case remitted to the Superior Court for further proceedings.

DUBOIS, C. J. concurs in the opinion of Sweetland, J.

PARKHURST, J. Without receding from the opinion already given, that the process of garnishment is inappropriate to the determination of the rights of parties and other persons interested under the agreement of deposit of shares of stock with the garnishee in this case, and without conceding that the question already discussed in that opinion is not properly before the court under the plea to the jurisdiction, I concur in the opinion of Mr. Justice Sweetland, in so far as it holds that shares in a foreign corporation, having no duly appointed attorney in this state, cannot be reached by process of garnishment of certificates which are in the possession of a person in this state.

JOHNSON, J., dissents.

*Frank W. Tillinghast, Michael J. Lynch,* for plaintiff.
*Comstock & Canning, Jeremiah E. O'Connell,* for defendant.